## Zoe McBride *et al.*, plaintiffs in error, *vs.* HILARY CICOTTE, defendant in error.

A party to a suit at law will not be permitted to call upon his opponent to testify, under the provision contained in Section 10, Chapter 102, of the Revised Statutes, where it is apparent to the Court, from the affidavit itself of the party applying for such privilege, that there are other witnesses obtainable, by whom the same facts can be shown.

It is not imperative upon the Court to grant such application, although the affidavit in support of it may be in strict compliance, both in form and substance, with the requirements of the Statute. If the Court shall know, from the prior proceedings in the cause, of which it is bound to take notice, that the affidavit is not true in fact, it may deny the application.

Where an application to make one of the opposing party a witness upon the ground, provided in the Statute, is denied by the Court below, the party applying cannot, upon error in this Court, allege other facts making such party a competent witness, which, though appearing in the proceedings below, were not suggested by the party on making his application.

Although it is discretionary with the Court, and in most cases proper, to allow a witness to give the reasons for his recollection of a transaction, he will not be permitted, under the pretence of doing so, to state facts inadmissible

by the rules of evidence, nor to relate his own conversations with others, especially where such conversations are concerning statements made to him by a former witness on the trial, and contain reflections on the motives of such witness.

To the statements of a witness which were not properly admissible in the cause, contradictory evidence was given by the opposite side; evidence corroborative of the statements of such first witness, is equally inadmissible, though offered as rebutting merely to such contradictory evidence.

Where a bill of exceptions presents an objection on the trial in the Court below, to the admissibility of evidence, which was overruled, although it does not show an exception to the ruling, this Court will look into the matter, notwithstanding the omission, presuming, from the sealing of the bill of exceptions, that the ruling was duly excepted to.

The filing of the affidavit, under Section 100, Chapter 102 of the Revised Statutes, does not authorize the swearing of a co-defendant, or co-plaintiff, or one not a party to the suit; the words "other party" meaning only the *opposite* party.

Where a witness is excluded on objection, but afterwards, the Court doubting the correctness of its ruling, offers to admit the excluded witness, the exclusion of the witness is not ground of error.

Error to Monroe Circuit.

*J. V. Campbell*, for plaintiff in error.

*Grosvenor & Wing* and *J. G. Thurber*, for defendant in error.

The defendant, Hilary Cicotte, presented for probate in the Monroe County Probate Court, an instrument alleged as the last will and testament of John B. Cicotte, deceased, bearing date June 29th, 1853, and to which Alfred G. Bates and Franklin Johnson were subscribing witnesses. The instrument was rejected and probate denied, and Cicotte appealed to the Circuit Court for Monroe County, where, upon trial had, judgment was rendered sustaining the instrument as the will of the deceased, and admitting it to probate. Exceptions were taken on the trial, and the cause was brought to this Court on writ of error.

On the trial in the Circuit Court, Bates and Johnson were produced as witnesses, and proved the execution of the will.

They testified substantially alike as to all the facts and circumstances connected with the execution of the will, with the exception of the place where they subscribed it as witnesses : Bates being of opinion it was in the room with, and in the presence of the testator ; Johnson, that it was in an adjoining room. On his cross-examination, Johnson also swore that he did not recollect swearing on the examination in the Probate Court about witnessing the will ; that I. P. Christiancy, who was counsel for Cicotte in the Probate Court, interrogated him, but asked no questions about the witnesses signing the will in the presence of the testator.

The defendant then filed an affidavit pursuant to Section 100, Chapter 102, of the Revised Statutes, setting forth that certain facts material to the issue and question, to be tried in said suit, were within the knowledge of John I. Cicotte, son and heir at law of said John B. Cicotte, deceased, and that there was no competent witness, whose testimony he could procure, by whom he could prove the facts above referred to ; and that said material facts were substantially as follows : That the will of said deceased was signed by said testator, and subscribed by the witnesses Bates and Johnson, in the presence of each other and of said testator, in the bed room where said testator was at the time sick, and all done at the same time ; and that after the will was signed by testator and witnesses, it was, by direction of testator, handed to Mary Cicotte, a daughter of said deceased, to be taken care of, etc.; adding other matters which are not material to be recited. Upon filing this affidavit, he offered said John I. Cicotte as a witness to prove the matters therein stated ; to which the contestants (plaintiffs in error) objected, because it appeared from the affidavit and from the former proceedings on the trial, that said matters were within the knowledge of other persons, viz.: said Bates and Johnson, and who had already testified of such matters. The Court overruled the objection, and permitted the said John I. Cicotte to testify. To which,

the defendant excepted. Said Cicotte then testified concerning said matters.

The defendant also produced I. P. Christiancy as a witness, who testified that on the hearing before the Judge of Probate, he was counsel for the defendant; that according to his recollection, both subscribing witnesses swore that Cicotte signed the will in their presence; that they signed the will as subscribing witnesses at his request, and in his presence; that he thought he put the question to the witnesses, "was it executed by testator, and attested in his presence?" that if the witness had not testified that the will was so attested, he should not have gone further with the case. Said witness was proceeding on his cross-examination to relate, as a reason for his recollection of the above facts, a conversation at his office, between himself and John I. Cicotte and H. and J. Cicotte, a few days after the death of deceased, to which testimony the contestants objected. The objection was overruled, and the witness permitted to state the conversation, which was as follows: "When the will was brought to me by J. I. Cicotte, accompanied by John and Hilary Cicotte, I opened it and said, 'that looks bad' (this was the first time I had seen the will); 'I should not wonder if that was done under advice, for a certain man called on me and asked if I had drawn a will recently for John B. Cicotte, and I replied 'no;' then he said, 'I must have drawn the last will, and it ought not to stand;' it was on Sunday; Johnson came in and appeared to be looking at my books; he turned round and said, 'Christiancy, have you recently drawn a will for John B. Cicotte?' I said no, Mr. McClelland had. Johnson said, 'I knew of that.' He said he 'had been informed, or supposed I had.' I said 'no.' He then said, "I have drawn the last one, and it ought not to stand,' and I asked 'why?' He replied, 'it was a ridiculous one, and gave all the property to the boys,' and when the will was brought to me I recollected this conversation, and that it was very recent, and I

then said to James J. Cicotte, 'if the will is contested, Johnson will be employed by the heirs.' I thought of all this when examining Johnson, as to his executing the will, as a witness; I was very careful to be particular in the examination of Johnson, for I thought his conversation with me in the office was very strange; no person was in the office with me but Mr. Johnson; Johnson said just what I have stated, and in the order I have stated. In less than a week after this a notice of application for probate of the will was published, for I told the whole of this to Mr. Cicotte when he brought the will to have me present it for probate; this conversation with Johnson took place on Sunday, the day witness afterwards understood that J. B. Cicotte died in the evening, and the witness repeated it as above stated to James J. Cicotte the next Wednesday after, when the will was brought to him to be presented for probate."

Johnson was then introduced as a witness for the contestants, and denied having been in the office of said Christiancy on the occasion testified to by him, and which said Christiancy had testified that he had communicated to said James J. Cicotte, Hilary and John I. Cicotte, or in their presence.

Sophia Paxton, one of the contestants, and plaintiffs in error, then filed an affidavit under the statute aforesaid, in the form required by said section 100 of chapter 102, for the purpose of having James McBride, husband of Zoe McBride, another contestant, examined as a witness on behalf of the contestants. The defendant objected to such witness, on the ground that the statute allowed the examination only of an opposite party, not co-plaintiffs or co-defendants. The Court decided that said witness was incompetent to testify, under the affidavit, and she was excluded.

The contestants introduced Serena McBride as a witness, and, upon stating the facts intended to be proved by her, they were objected to as incompetent, and the Court sustained the objection; afterwards, however, and before the contestants

had closed their proof, the Presiding Judge becoming satisfied that his ruling was incorrect, informed the counsel for contestants, that they might introduce the witness for the purpose stated; but the counsel did not afterwards introduce her.

After the contestants had closed their defence, Hilary Cicotte again introduced the said John I. Cicotte as a rebutting witness, and was proceeding to prove by him that said Christiancy, on the Wednesday after the death of the said John B. Cicotte, mentioned and stated in his office that said Johnson had visited said Christiancy's office on the Sunday, the day of said Cicotte's death, and had the conversation with said Christiancy testified to by him. The contestants objected to said testimony, and to the witness being allowed to testify to such conversation, or declarations of said Christiancy, on the ground that the same were hearsay merely, and that said testimony was not rebutting evidence; that no evidence had been introdued by contestants denying said conversation, and that it was not a fact material to the issue. The Court overruled the objections, and decided that said testimony might be given as rebutting evidence ; to which decision the contestants excepted, and the said Cicotte testified to said conversation.

Judgment having been rendered for Cicotte in the Court below, the contestants sued out this writ, alleging, among others, the following several errors :

The Court erred in permitting John I. Cicotte to be sworn in the cause under the affidavit of Hilary Cicotte filed in the said Court, and set forth in the bill of exceptions.

The Court erred in permitting Isaac P. Christiancy, under pretence of giving reasons for recollecting other matters, to testify to the alleged conversation between himself, John I. Cicotte, James J. Cicotte, and Hilary Cicotte, at which none of the other parties were present, and concerning which no question had been asked.

The Court erred in permitting said Christiancy, under pretence of giving reasons for explaining his recollection on other matters, to testify to the alleged conversation between himself and Franklin Johnson, concerning which no questions were asked.

The Court erred in excluding the testimony of James McBride.

The Court erred in receiving the testimony of John I. Cicotte as to a conversation in Christiancy's office, between said Christiancy and Hilary Cicotte, James J. Cicotte, and John I. Cicotte, introduced as rebutting evidence, and to sustain said Christiancy.

The Court erred in giving judgment for admitting to probate the instrument alleged as the will of John B. Cicotte, deceased.

By the Court, JOHNSON, J.

The first question in this case is, whether the Court erred in admitting John I. Cicotte to testify under the affidavit of the defendant in error.

This was an affidavit filed in pursuance of Section 100, in Chapter 102, of the Revised Statutes, which provides that, "whenever any action, suit, or proceeding, shall be pending in any Court of law, and either party shall make and file with the Clerk of such Court, or with the Clerk of the Court in which any issue joined therein shall be triable, an affidavit, setting forth that any facts material to the issue or question to be tried are within the knowledge of any *other* party to such suit or proceeding, and that there is no competent witness whose testimony he can procure by whom such facts can be proved, the parties to such suit or proceeding, and any other persons interested in the event thereof may be examined on oath in relation to such facts." This affidavit in form was in strict compliance with the foregoing provision, and it

stated, among other things, "that certain facts material to the issue and question to be tried in said suit, were within the knowledge of John I. Cicotte, son and heir-at-law of John B. Cicotte, deceased ; and that there was no competent witness whose testimony he could procure, by whom he could prove such facts. That such facts were substantially as follows : That said will of said deceased was signed by said testator, and subscribed by the witnesses, Alfred G. Bates and Franklin Johnson, in the presence of each other and of said testator, in the bedroom where said testator was at the time sick, and all done at the same time, and that after the will was signed by testator and witnesses, it was, by direction of testator, handed to Mary Cicotte, a daughter, etc. ; " adding other matters which are not material in the consideration of the case.   It was objected, that the said defendant in error was not entitled to the testimony of the witness Cicotte under this affidavit, because it appeared from such affidavit and from the former proceedings on said trial, that said matters were within the knowledge of other persons than the said witness Cicotte, viz. : Alfred G. Bates and Franklin Johnson, and because the same was of matters, concerning which, the sub-scribing witnesses aforesaid had testified ; but the Court overruled said objection, and decided that the said witness Cicotte should be permitted to testify to the matters set forth in said affidavit.

Upon *this* decision, error is assigned, and it presents the first question for our consideration.

Bates and Johnson, the subscribing witnesses to the will, had then already given in their evidence, they had been called by the defendant in error ; they *each* had testified to all the facts and circumstances connected with the execution of the will, and the only difference in their testimony was as to the *place* where they subscribed the will as witnesses.   Bates was of the opinion that it was in the room *with*, and in the presence *of* the testator ; Johnson was of the opinion

that it was in an adjoining room.    In all *other* respects their testimony substantially agreed.

Is *this*, then, such a case as was intended to be provided for by the foregoing statute?

The object of that statute was to remove certain common law disabilities. It enables a party to a suit to call his adversary, in certain specified cases, not as a witness genererally, but to testify to certain facts within the knowledge of such adversary, and which cannot be proved by any competent witnesses.

This right, thus acquired under the statute, upon filing such an affidavit, is not founded upon general principles, but was designed to make an exception to these general principles, to meet particular cases of hardship.

I know the right of a party to call his adversary as a witness, to compel him to disclose facts against his own interest, has recently grown into some degree of popular favor! It is for that reason, if for no other, that we should not, inconsiderately and *hastily*, adopt a principle, which, when tested by time and experience, will be found *only* to result in oppression and injustice; every bad law *may*, perhaps, have the honor of claiming a similar parentage.

Some things, most certainly, may be urged against it. It places a good man and a bad man, in litigation, upon very unequal terms; for the one might call his adversary with perfect safety, while the safety of the other would consist in denying himself of that inestimable privilege. There is nothing in it that commends itself to our favorable consideration. We do not, however, wish to express any disapprobation of the provisions of this statute, when properly construed; but to give it the construction contended for by the defendant in error, would be to effectually remove every limitation to its provision; it would authorize a party, under one pretence or other, to swear his adversary in all cases.

The required language of the affidavit *is*, that certain facts material to the issue are within the knowledge of the other party, and that there is no competent witness, whose testimony he can procure, by whom he can prove such facts.

It would be a perversion of this statute, to so construe it as to enable the party to call his adversary for the purpose of giving cumulative or contradictory evidence, to compel him to testify to facts which transpired in the presence of many witnesses, who, in detail, relate what is said and done on a particular occasion.

It is no answer to say, that it will not be presumed that he will acquire any unjust advantage in calling a witness against his own interest, for it is a question of right under this statute. The law presumes a man will swear to the truth, but he ought not to be compelled to do *that* against his own interest, short of a positive provision of law. But when we construe this statute so as to embrace a large class of cases, such as where confidence is reposed, where business is transacted in the absence of witnesses, or where the persons called to witness the transaction cannot be procured in Court, we give it a reasonable and just construction, and one that best comports with the intention of the Legislature, as expressed in the language they have used. It is the only well-defined distinction that can be made, and, if we abandon this, it amounts substantially to an unrestricted right.

The impropriety of any other construction, can hardly be illustrated by any case better than the one before us.

The law authorizing the disposition of property by will, is justly guarded by many restrictions. Great care and solemnity is required in the execution of a will. It must be attested by two or more witnesses : these are men of the testator's own choice ; they are indispensable to its proof, if alive and within the jurisdiction of the Court.

In the case before us, both the witnesses were called and sworn; both testified to all the facts and circumstances in

detail; both testified to the material fact set forth in the affidavit, one substantially agreeing, and the other disagreeing with the testimony of the witness offered; still the defendant in error insists that *this* is a fact of which he has no competent proof, and asks the benefit of this statute; but we think he is not entitled to it.

This ground of objection, and the only one made and urged upon the consideration of the Court below, has not been directly met by the counsel for the defendant in error; but they attempt to justify the ruling of the Court upon other grounds, viz.: 1. They urge that the affidavit is in pursuance of the statute, and being so, the Court can exercise no discretion in the premises. That the only power of the Court is, to pronounce upon its sufficiency, and, if it is found to be in compliance with the statute in form and substance, then the inquiry is ended.

Nothing is more certain, than that this is an application to the Court, the decision of which must depend upon the applicant's legal rights, which rights have their foundation in what shall be made to appear from the affidavit and proceedings in the case; first, the affidavit must be in form; second, it must be truthful; and thirdly, it must have an adaptation to the remedy contemplated by the law.

If, then, the right depends upon an order of the Court, founded upon the affidavit of a party, in the progress of a cause, and the Court shall know from the proceedings then had, and of which they are bound to take notice, that the same is not true in fact, or that it is attempted to be used in a case having no application to the condition of things contemplated by the law, it cannot be successfully contended that it would be the duty of the Court to grant the order.

The Court could not close its eyes to the fact, that a party had precluded himself from the right to call witnesses, by virtue of such an affidavit, to testify to facts *then* already

disclosed by witnesses whom he himself had produced and caused to be sworn.

The administration of justice upon such a principle would be a farce.

We do not wish to say that this is a subject in which a collateral issue can be formed, that the Court would hear any counter affidavits or proof of any description upon such an issue, but when in the trial of the main issue it shall appear that the party is not entitled to file such an affidavit, it is the duty of the Court to reject it.

Suppose that a party should file such an affidavit in the first instance, and after his adversary is sworn, he should continue to call witness after witness to the same point, would it be the duty of the Court to allow the whole testimony to go to the jury? And this is the sole point upon *this* question, for counsel do not pretend to deny that the material fact sought to be proved by Cicotte had been testified to by other witnesses; I say witnesses, because both Johnson and Bates testified to the place *where* the will was subscribed.

Secondly, as a further answer to this objection, the counsel for defendant in error insists that Cicotte is a competent witness, *aside* from the affidavit; that he is not a party to the proceeding, and being an heir-at-law of the testator, and having no provision made for him in the will, his interest is adverse to the defendant in error, and therefore competent.

It is too late to take this position now. This question was not submitted to the consideration of the Court below. *There* the defendant insisted that the witness was made competent by the affidavit, and that was what the Court decided; the Court never decided upon the competency of this witness aside from the affidavit, and we cannot extend our inquiries beyond that point; it is true, that it is our duty to look at the whole record to see the effect of a particular ruling, and although erroneous, if we can say that the party has not been prejudiced by it, then we will sustain the judgment; but this is

62

not one of those cases. How can we say that Cicotte has no interest that would render him incompetent? The record shows nothing conclusive in this respect, and we cannot presume it, especially against what the defendant has conceded.

If the evidence of the witness Cicotte was immaterial, and we could say it had no influence upon the minds of the jury, or that the evidence was sufficient to support the verdict without it, then we might very properly disregard it; and such is the rule established by the authorities; but the defendant has conceded, that this witness without the affidavit was incompetent, and he cannot ask us now to presume he was not, because the record does not otherwise show. If they had insisted upon swearing this witness without an affidavit, that would have driven the plaintiff in error to have shown his interest; but whether he could have done so or not, is not for us to decide. On this point then, we think the objection to this witness has not been answered, and that the Court erred in allowing him to be sworn.

But there is another point in the case, equally fatal to the judgment. It is raised by the second and third assignments of error to the ruling of the Court, upon the objection to the testimony of Isaac P. Christiancy, a witness produced and sworn on behalf of the defendant in error.

Christiancy was called to impeach the witness Johnson. Johnson had been interrogated in reference to his testimony before the Probate Court, and particularly as to whether he did *there* swear that he witnessed the will in the presence of the testator, which he denied. Christiancy contradicted him in this particular, not in positive terms, but such was his impression. He believed that he put the question directly to Johnson, and was answered affirmatively; afterwards, and upon his cross-examination, he insisted upon assigning his reasons for his recollection upon the subject.

It is unquestionably discretionary with the Court to allow a witness to give his reasons for remembering a particular

transaction, and perhaps, in most instances, highly proper; but a witness cannot be allowed, under such a pretence, to testify to facts which are material to the issue, and inadmissible by the rules of law; and such was the case in this instance. He was allowed, under this pretence, to testify to statements made to him by the witness Johnson, which had a direct tendency to impeach him. The conversation narrated by the witness, disclosed such a feeling on the part of Johnson in reference to the disposition of this property by the will in question, as to impair, to some extent, in the minds of the jury, his credibility as a witness. That he stated that the will was a ridiculous one, and ought not to stand. Showing that he was not unbiased, but influenced by strong motives to defeat the will, and such a state of mind would certainly have a tendency to affect his testimony before the jury. And this testimony was not admissible, because Johnson had not been interrogated as to what he had said on that occasion.

And this is not all. The witness, under the same pretence, was allowed to testify to his own statements made to his client Hilary Cicotte, in the presence of James J. and John I. Cicotte, of what was said by Johnson in such conversation, and not only what was said by Johnson, but was allowed to express his opinion of the conduct and motives of Johnson. Speaking of the will, when handed to him by the said Hilary Cicotte, he says: I opened it, and said this looks bad (referring to the mutilated condition of the will), and I should not wonder if this was done under advice, for a certain man called on me, etc., and then repeats what Johnson had said as he had before testified, and concludes by stating to them that "if the will is contested, Johnson will be employed as counsel." All this evidence was insisted upon and admitted, under pretence of explaining why he remembered that a particular question was put and answered in a particular manner before the Judge of Probate, and of which he was not certain about, after all.

And all of this evidence was allowed to go the jury. It was inadmissible for two reasons : 1. The whole had a direct tendency to impeach the witness Johnson, and that part which related to his statements was objectionable for the reason, as before stated, that he had not been interrogated thereto. 2. Because that part of it which related to the statements made by the witness to the Cicottes, was not admissible under any circumstances, and more particularly wherein he expresses an opinion reflecting upon the motives and conduct of the witness Johnson. He might as well have told the jury that Johnson would swear false, as that the will was mutilated by his advice. It is true, this was not an expression of an opinion *to* the jury, but it was the evidence of such an opinion expressed to the Cicottes, and it may be presumed to have had the same weight with the jury. No witness can protect himself against such impeaching evidence; and no party can be presumed to be prepared to rebut it, and it cannot be justified, either upon principle or authority.

In connection with this point in the case, it is proper to consider a further objection to the testimony of John I. Cicotte, which is raised by the seventh assignment of error. The said John I. Cicotte was again offered as a witness to testify to the foregoing statements of the witness Christiancy made by him to this witness, Hilary and James J. Cicotte, claiming it as rebutting evidence. This was objected to, for the reason that the same was hearsay merely, and that said testimony was not rebutting evidence ; that no evidence had been introduced by contestants denying the said conversation, and that it was not a fact material to the issue.

After the witness Christiancy had been sworn, Johnson had been recalled to contradict the conversation with him as sworn to by said Christiancy, and, therefore, this so-called rebutting evidence of the witness Cicotte was insisted upon.

If the statements of Christiancy to the said Cicottes had been proper evidence, it might possibly, in some sense, be

regarded as rebutting evidence ; but, as it is, we can only look upon it as an attempt to corroborate the unwarrantable statements and opinions of the witness Christiancy, and consequently not admissible.

The answer of counsel to these points of the case, is that no exceptions were taken to the ruling of the Court below, so far as relates to the testimony of the witness Christiancy, and so it appears from the record.

The record shows, however, that objections were made to this evidence, and the particular reasons assigned why it was not admissible, and that the Court overruled such objection and allowed the witness to testify, but it does not show exceptions were at the time taken to such ruling, and, for this reason, it is insisted that these errors are badly assigned.

The authorities cited by counsel are not directly in point. The rule established by these cases is, that the exception must not be too general. In the case of Jackson *vs.* Caldwell (1 *Cow.*, 622), Woodworth, J., says : " That a bill of exceptions does not draw the whole matter into examination, but only the point to which it was taken, and that the party excepting must lay his finger on those points which might arise, either in admitting or denying evidence, or in matter of law arising from a fact not denied, in which either party was overruled by the Court."

No such objection is applicable to the point under consideration, and there is no reason why we should not pass upon this point, if we can do so consistently with the rules of practice.

Graham, in the second edition of the work on Practice, 246, speaking of the practice upon this point, and referring to a decision of a case then recently made in the Supreme Court of New York, says : " That where the bill of exceptions presented various objections to the admissibility of evidence and the charge of the Judge, although it did not expressly appear that any exceptions had been taken, the Court said

they would look into the matter, notwithstanding the omission, upon the presumption that the exception had been taken, from the fact of the bill being sealed." See also the case of 6 Cow., 189, and 9 Wend., 241, where similar presumptions are recognized.

We therefore think we are at liberty to consider the question raised by the second and third assignments, as well as that of the seventh, and that the Court below erred in overruling the objections to this evidence.

This disposes of the case, but as it may be retried, we will briefly notice the other points. The fourth objection was not well taken. McBride was not made a competent witness by the affidavit in question. The filing of an affidavit under section 100, before cited, does not authorize the swearing of a co-defendant nor a co-plaintiff, nor any person not a party to the record. The words "other party," in said section, have been properly construed to mean opposite party, and it being by virtue of the affidavit alone that the witness is made competent, and then only to swear to the facts set forth in such affidavit as being within his knowledge, it follows that no other person is made competent by such affidavit to swear to such facts, notwithstanding the general language of the concluding part of said section, " that the parties to such suit, and any other person interested in the event thereof, may be examined on oath in relation to such facts."

This construction must necessarily exclude all persons not parties to the record, and all persons who were such parties, except the opposite party, and consequently would exclude McBride.

This construction would also have excluded the witness Cicotte, had objection for that reason been made.

The objection to the ruling of the Court in excluding the testimony of Serena McBride, upon which the sixth error is assigned, may possibly have been well taken, but before the closing of the testimony, the Judge, having doubts as to the

correctness of his decision upon that point, offered to open the question and hear a further argument, which offer the counsel declined, and we think in justice he ought now to be excluded from being heard in this Court.

The eighth assignment of error is not insisted on.

The judgment in this cause must be set aside and a new trial granted, with costs to abide the event.

Present, JOHNSON, GREEN, BACON, COPELAND and MARTIN, J. J.