KIMBALL *v.* KIMBALL ET AL.

---

## Wm. E. Kimball et al. v. Samuel B. Kimball.

*Witnesses: Representatives of deceased person.* The statute — *Sess. L. 1861, p.* 169 — forbids parties, plaintiff or defendant, testifying against the representatives of a deceased person, when the matters, if true, must have been equally within the knowledge of the deceased. *Held,* that the statute does not make the admissibility of the party's testimony depend upon the degree of his knowledge; but it designs to prohibit his testifying at all upon matters which were within the knowledge of himself and the deceased alike. It precludes a party from putting in evidence, his account of a transaction known to both, when the death of the opposite party prevents his account being heard also.

Whenever there is a fact bearing upon the issue which was not within the knowledge of the deceased, and the party testifies to it, his right to give evidence to that fact does not entitle him to extend his testimony to other facts which were within the knowledge of the deceased.

*Held, further,* that the court, and not the witness, must decide as to the competency of the evidence in such cases.

, *Statute of Limitations: Accounts Current.* When the statute of limitations had commenced to run against a certain item in an account, but which the plaintiff sought to save by showing credits in favor of the deceased, no account of which appeared to have been made by deceased: *Held,* that to prevent the statute from running against said item, there must have existed some credit given by deceased, on deal, within the six years prior to the death of defendant.

*Evidence: Receipt: Joint undertaking: Statute of Limitations.* The plaintiff sought to recover demands arising out of certain receipts given him by the deceased who was his father; all dated fourteen years prior to his death.

The first was signed by the deceased and another jointly, acknowledging the receipt of certain notes for collection, and agreeing to apply the proceeds on certain other notes, and to account for the balance.

*Held*, that such receipt was inadmissible for the purpose of fixing any liability upon the estate of the deceased, it being a joint undertaking; but that it was admissible to show plaintiff's right to the money if other evidence showed its collection by deceased, severally.

*Held, further*, that the statute of limitations would not commence to run against said receipt until an accounting had been called for.

*Receipt for money and personal property: Demand: Statute of limitations.* Another receipt was for a certain sum of money, and for certain personal property, to be accounted for.

*Held*, that as regards the money, the receipt must be considered as a note payable on demand, and that it was barred by the statute; but that as to the personal property, no action could arise until it had been sold or demanded.

*Receipt for money to be applied upon note in hands of third party: Statute of Limitations: Reasonable time.* A fourth receipt of same date was for a sum of money received from plaintiff, to be paid on a note held by another person against him, or to account for the same. Fourteen years had elapsed since the receipt was given: *Held*, that all claim for this money was barred by the statute, as the deceased would have been bound to make payment of the moneys within a reasonable time, and was liable to be called upon to repay them, if he failed to do so: and that such reasonable time had elapsed more than six years before the father's death.

*Heard October 23d.      Decided November 2nd.*

Error to Lenawee Circuit.

This was an appeal from the allowance by a commissioner of the estate of Daniel Kimball, of certain claims against said estate.

In the Circuit Court the defendant in error was permitted, under objection, to testify concerning certain dealings between himself and Samuel B. Kimball in his life time, and to offer certain receipts in evidence.

Judgment was rendered for plaintiff below.

The exceptions to the rulings of the court below, are stated in the opinion.

*A. Howell* and *C. A. Stacy*, for plaintiff in error.

*A. L. Millard* and *A. F. Bixby*, for defendant in error.

COOLEY, J.

The first question requiring consideration in this case is, whether the court was right in allowing the claimant, Samuel B. Kimball, to testify on his own behalf to various dealings between himself and the deceased.

The statute provides " That when a suit or proceeding is prosecuted or defended by the representatives of a deceased person, the opposite party, if examined as a witness on his own behalf, shall not be permitted to testify at all in relation to matters which, if true, must have been equally within the knowledge of such deceased person." — (*Laws* 1861, *p.* 169). The construction put upon this section by the court below, seems to be, that it does not prohibit a party from testifying to transactions which were within the knowledge of the deceased, provided his own knowledge in regard to the transaction was superior in degree, or extended to some particulars which the deceased may not have known.

A few extracts from the bill of exceptions will illustrate the view taken by the court below of this statute. A principal portion of the claim in controversy consisted of an account for butcher's meat, and the plaintiff being on the stand, was asked by his counsel: " Are these accounts correct, as far as you know ?" Which question being objected to, the court overruled the objection " on the ground that, unless from the nature of the transaction, and circumstances of the case, those matters *must* have been equally within the knowledge of the deceased, the plaintiff is not precluded by the statute from testifying in relation thereto in his own behalf, and that it was competent to show by the witness whether the matters were equally within the knowledge of the deceased and of the witness." And thereupon the plaintiff testified that the accounts were all correct, as he believed.

Again : under the like objection the plaintiff testified to a charge against the deceased (who was his father ), for the

KIMBALL v. KIMBALL ET AL.

keeping of a horse: "Father came and turned the horse into my pasture. I don't think he knew how long it remained in the pasture. It was about four weeks." *Question.* Did your father know as well as you did what it was worth to pasture the horse? *Answer*—I don't think he did. *Question*—What was it worth to keep the horse? *Answer*—Eight dollars.

Again: the plaintiff, in order to save his account from the operation of the statute of limitations, sought to establish credits in favor of the deceased, and for that purpose was asked: "What is the credit, 'By horse to Templeton's mill, two dollars,' given by you to deceased in 1861 for?" Objection being made to this question, the court ruled that the witness could only testify to such matters pertaining to this item as were not *equally* within the knowledge of the deceased. And thereupon the plaintiff testified that he had his father's horse to go to Templeton's mill; that he was gone one day, and the use of the horse was worth two dollars; that his father did not go with him. The witness, under this ruling, was made the judge what it was competent for him to testify to, and he seems to have made the most liberal use of his discretionary power.

In like manner, the witness was allowed to testify to other credits in favor of his father, for keeping his, the plaintiff's, horses, on the ground "that the deceased did not know as much about the credit as the plaintiff did." He testified that he thought the deceased knew his, the plaintiff's horses, were kept in the barn of deceased; but did not know how much it was worth, or how long they were there.

These are but samples of the evidence given by the plaintiff, and it is evident that he was permitted to testify to dealings between the deceased and himself, on the sole ground that in some particulars his knowledge was superior. His testimony was not confined to those matters of which the deceased was ignorant, but it covered the whole case,

under an assumption of superior knowledge as to time or value. If this is a correct construction of the statute, I do not perceive in it that protection to estates against the knavery and perjury of dishonest claimants which it was designed to afford; for the witness, in order to render his testimony competent, has only to assume, that, in some particulars, his knowledge of the transaction is more complete than that of the deceased, and that assumption entitles him to put his account of the transaction before the jury.

I am of opinion that the court erred in its construction of the statute, and that the word "equally," as employed in this section, does not relate to the *degree* of knowledge possessed by the parties, but is used in the sense of *alike*, to preclude the party's evidence where the facts to which he is called were known to both. The word *equally* is often used in this sense, and it can not be employed in any other here, without leading to manifest absurdities.

If the estate was legally liable for any such butcher's bill as was charged against it, the deceased must have had knowledge of its creation. It is not at all probable that he would have remembered all of the items, nor does the plaintiff assume to do so. So far as this record discloses, the superior knowledge which the plaintiff had of the account must have been derived from his books. He has been allowed to give his version of dealings, though the testimony of the opposite party, had he been living, would have covered precisely the same ground, inasmuch as all these dealings, so far as we are informed, were within his personal knowledge. This is not what the statute contemplates. It does not design that one party shall be allowed to give in evidence his version of a transaction within the personal knowledge of both when death has precluded the other from being heard also.

The effect of the plaintiff's construction is perhaps best seen in the evidence relating to credits. The plaintiff proposes to establish a credit in favor of the estate, by testifying

to hiring a horse of deceased to go to Templeton's mill. If he hired the horse for that purpose, his father must have known of it. There is no pretence that the hiring was not fully understood between the parties, but the plaintiff says, *his father did not go with him;* and in this exclusively consists his superior knowledge of the transaction, unless he assumes to have known best what the use was worth. His father did not know whether he actually went to the mill, or somewhere else. If the addition of an immaterial circumstance like this will entitle a party to testify concerning a transaction within the knowledge of the deceased, it will be easy for the party to testify fully in nearly every case which can be suggested.

I am also of opinion that the witness is not to be the judge for himself of the competency of his evidence in these cases; but the court must decide upon it. There will be many cases where it cannot be known until the testimony is given, whether it was within the knowledge of the deceased or not; but wherever from the nature of the case he must have known about it, the opposite party should not be allowed to put his own account of the whole transaction before the jury, on pretence of giving evidence upon some branch of it of which the deceased had no knowledge. Wherever there is a fact bearing upon the issue which was not within the knowledge of the deceased, and the party testifies to it, his right to give evidence to that fact does not entitle him to extend his testimony to other facts which were within the knowledge of the deceased, and thereby make out a case which the deceased might perhaps have rebutted by his own evidence had he been living.

It may be, that in a case like the present, the plaintiff might be entitled to testify to the value of such articles as he claims to have delivered to the plaintiff, where it does not appear that any price was agreed upon; but this would not warrant him in testifying to facts establishing the sale and delivery, which must be proved by other evidence, since

of those facts, where the deceased was purchaser in person, it is to be assumed that each party was fully cognizant.

The New York statute forbids a party being examined against representatives of a deceased person, "in respect to any transactions had personally between the deceased person and the witness."— *Code*, § 399, *as amended in* 1860. The purpose of this statute was the same as that of our own, and I think the terms employed mean substantially the same thing. It has been decided, under that statute, that the party was not only precluded from testifying directly to the transactions between himself and the deceased, but also from speaking of the circumstances surrounding such transactions, when the effect of the evidence would be to affect the minds of the jury in respect to the transactions themselves. Thus, when the signing of a paper by the deceased was in issue, which was claimed to be a forgery, and two different kinds of ink appeared in the writing, it was held not competent for the party to testify that he was in the habit of carrying an inkstand with him about the time when it was claimed the deceased had signed the paper; the effect of the testimony being to show what took place between the witness and the deceased, and to lead the jury to believe that two inkstands were present at the time, and ink by chance used from both.— *Dubois v. Baker*, 40 *Barb.* 562; and see *Van Alstyne v. Van Alstyne*, 28 *N. Y.* 378.

The next question in the case relates to the statute of limitations. The account for butcher's meat was all barred by the statute, unless saved by credits which the plaintiff sought to establish in favor of the estate, but of which no account was shown to have been made by the deceased. The judge charged the jury that "in order to prevent the statute of limitations barring and cutting off the account for meat, the claimant must show that there was a mutual account current between him and the deceased during a period within six years prior to the death. That is, that at least the last item of such account, on one side or the other,

16 MICH. — P.

should have been within the six years prior to the decease of the father. To constitute a mutual account, there must be a mutual credit founded on a subsisting debt on the other side, or an express or an implied agreement for a set-off of mutual debts, or that there was an express or implied understanding that mutual debts should be a satisfaction or set-off so far between the parties. In other words, if no charges appear to have been made or brought forward by the deceased or his representatives in this case, it is not enough for the claimant to prove that, as a meat market man, he supplied and charged the deceased with meat. This would not make a mutual account current between the parties. Here would be a credit but on one side: it would not be mutual. There must have been a credit on the other side; that is, on the part of the deceased, either expressly given or impliedly; that is, a mutual or alternate course of deal; in other words, there must have been a credit given by the deceased, either expressly or impliedly by his consent, of some items of deal. It is not necessary that it should be put on a book by deceased, or be brought forward by his representatives here as a claim, if the claimant and the deceased at the time understood that the items credited by the defendant were so intended, to go to the credit of the deceased upon the account. · If not, then the items of credit will not operate to make a mutual account current."

I perceive nothing here of which the defendants below were entitled to complain. It seems to be a correct statement of the law applicable to the book accounts which the plaintiff claimed to have proved. A portion of the plaintiff's demand, however, arose upon receipts which stood upon an altogether different footing from the accounts.

The first of these was dated August 13th, 1849, signed by the deceased and one Titcomb, jointly acknowledging the receipt of certain notes for collection, agreeing to apply the proceeds on two certain notes given by the plaintiff,

and to pay over or account to him for the balance. This receipt was admitted in evidence, under objection.

I do not think this receipt was admissible in evidence for the purpose of fixing any liability upon the estate of the deceased, since, so far as it was a contract, the obligation was joint, and not several. But as evidencing the plaintiff's right to the moneys payable on these notes, and as a foundation for other evidence showing that the deceased had collected the money upon them, or any of them, and by virtue of such collection, had become liable to account to the plaintiff therefor, independent of the promise contained in the receipt, I think it would have been competent. Some evidence to establish such separate collections by the deceased was put in, and was properly submitted to the jury.

The defendants also objected to this receipt, that it was barred by the statute of limitations; their testator having deceased in 1863. But this objection has no force, as the statute would not commence running against such a receipt until the signers had been called upon for an accounting. The receipt established the relation of principal and agent in respect to the collection and disbursement of the moneys, which could only be changed to the relation of debtor and creditor by a demand.

A second receipt for notes, bearing the same date, was signed by the deceased alone, and was properly received in evidence.

A third receipt signed by the deceased, and bearing the same date, was for sixty-two dollars in money, to be accounted for with interest on demand, and for a chaise and other personal property, to be sold and accounted for. In regard to the money, this receipt must stand on the same footing as a note payable on demand, and was properly held to be barred by the statute.— *Wenman v. Mohawk Ins. Co.* 13 *Wend.* 267; *Edw. on Bills*, 512. In regard to the personal property, no action would arise until it had been

sold or demanded, and it was proper to admit the receipt in evidence, on the understanding that it should be followed by a showing of such sale or demand, as the plaintiff proposed in this case. If no such showing was made, the evidence should have been stricken out.

A fourth receipt, of the same date, was for fifty-five dollars, with which the deceased undertook to pay the half of a certain note owing by the plaintiff and himself to one Taylor, or to account for the same, with interest, to the plaintiff on demand. This was received in evidence under an objection by defendants that it was barred by the statute. I am inclined to think, that in this ruling the court erred. There is no showing whether the note to Taylor was then due or not, and it is to be inferred that it was. The obligation of the deceased, then, was to pay the note within a reasonable time, or to account for the money. The receipt had been given fourteen years when the testator died, and giving the utmost latitude to reasonable time, we shall still find that an action must have accrued more than six years before the testator's death. I do not think a demand was essential to the right of action. The deceased undertook to pay the money on the Taylor note, and this was evidently the main purpose of the receipt. The remaining clause of the document meant no more than that, if he failed to make the payment, he would remain liable to the plaintiff for the amount, with interest.—See *Waters v. Earl of Thanet*, 2 *Q. B.* 757.

This disposes of the objections argued in the brief of the plaintiff in error. As I think the court erred in some of its rulings, as indicated, I think the judgment should be reversed, with costs, and a new trial granted.

CHRISTIANCY J. concurred.

CAMPBELL J.

The charges of the court upon the subject of excluding the testimony of defendant in error, were all given in the

words of the statute, but in some instances it is very plain that they were so applied as to mislead the jury and to allow the consideration of incompetent evidence. Under the rulings, he was allowed to testify concerning dealings had personally with his father, merely because he had, or claimed to have, superior knowledge, or knowledge on some matter connected with the legal operation of the transaction which his father was not supposed to know. In some instances he was apparently allowed to testify on facts known to both, on the ground that he knew more about prices or values than his father.

Even if it were true that superior knowledge concerning personal arrangements would open the door to full testimony on what was known, as well as what was not known to both, questions of value, where no price has been agreed upon, are independent facts, having no more relation to one transaction than to another. They stand entirely outside of the dealings of the parties, and may be proved by any one. And while I see no reason why defendant should not prove value, his right to do so cannot enable him to prove other things within the exception of the statute.

When the statute excludes the testimony of a survivor concerning matters which must have been equally within the knowledge of the deceased, I understand it to refer to all matters so far as they were transacted between the parties personally, and concerning which the knowledge on both sides was derived, not from information of agents or others, but from direct participation, perception, or action. The object of the law was to prevent one party from having an opportunity, after another's death, to give evidence, which, if living, it would have been in his power to explain or contradict, in case it should be untrue. And nothing whatever, that took place at any personal interview, or by the personal act or intervention, or with the actual knowledge of the deceased, can be shown by the survivor.

But the statute only excludes that which "*must have been*" within the knowledge of the deceased. And, inasmuch as there may be many things done or furnished to a person concerning which he has no direct knowledge, I think nothing can be excluded unless it is clear that such personal knowledge must, from the nature of the case, have existed, until it appears in fact. And, until so appearing, I see no reason why the survivor may not testify. I do not think it by any means can be inferred, without proof, that the various articles furnished a family by a butcher from time to time must necessarily have been within the personal knowledge of the head of the family, and the court can not properly assume that they must have been.

But upon several matters appearing in the case, a personal knowledge was manifest, and the evidence of defendant, as to those, should have been excluded. A question somewhat analogous was decided in *McBride v. Cicotte*, 4 *Mich.* 478. It was there held that, under a statute allowing a party to be called to prove facts which there was no competent witness attainable to prove, it was not allowable to introduce a party to contradict other witnesses, or to swear to facts on which they might be questioned, simply because he would give a different version. The exclusion was held to depend upon the transaction concerning which they testified, and not upon their varying accounts of it. And upon similar grounds it was held in *Hogan v. Sherman*, 5 *Mich.* 60, that the affidavit for the examination of a party under that statute should properly state the general fact to be proved, and not the separate circumstances which were to be shown to make it out.

I concur, therefore, in holding that the court below acted on an erroneous view of this statute.

I also concur on the other points discussed by my brother Cooley, upon the grounds he has taken.