### JEWELL v. JEWELL'S ESTATE.

1. PRINCIPAL AND AGENT—RELATIONS—EVIDENCE—MEMORANDA.

A memorandum book kept by an agent in his own handwriting, in which are entries relating to his principal's business, and covering a period of many years before and after the date of a settlement between them, the entries before the settlement being crossed out and those made thereafter not being so crossed, is competent evidence, after the death of the agent, of the nature and extent of the business relations between him and the principal; but its completeness is a question for the jury, and, as evidencing liability, only those entries after the settlement are to be considered.

2. SAME—LIMITATIONS.

A right of action in favor of a principal to recover money collected by his agent, whose duty to remit is fixed without an accounting, accrues as soon as the money is paid to the agent.

3. LIMITATIONS—PRINCIPAL AND AGENT—TRUST RELATION.

The relation between a principal and an agent who has ceased doing new business for his principal, and whose duty it is

merely to collect and remit the money due his principal on outstanding mortgages, is not such a trust relation as suspends the running of limitations.

4. SAME—NEW PROMISE—SUFFICIENCY OF WRITING.
    A letter written by an agent to his principal, stating, "I have used the money and I want to turn out my property to make you all right," constitutes a sufficient acknowledgment by the agent of the existence of a debt in favor of the principal to satisfy the statute (§ 9740, 3 Comp. Laws) requiring acknowledgments of debts to be in writing in order to postpone the running of limitations.

5. APPEAL AND ERROR—QUESTIONS CONSIDERED—THEORY BELOW.
    Where defendant requested a directed verdict on the ground that the claim was barred by limitations, and did not, either in his requests to charge or assignments of error, raise the question of the effect of testimony offered in proof of a writing which, if as represented, postponed the running of limitations, the judgment will not be reversed because the truth of the testimony as to such writing was not submitted to the jury, and the trial court charged that limitations had no application to the case, though the charge was based on the erroneous theory that the relations of the parties were such as to preclude the running of limitations.

Error to Newaygo; Palmer, J.    Submitted January 19, 1905.    (Docket No. 80.)    Decided April 4, 1905.

James M. Jewell presented a claim against the estate of Joseph B. Jewell, deceased, for money loaned by decedent as claimant's agent.    The claim was disallowed in the probate court, and claimant appealed to the circuit court. There was judgment for claimant at the circuit, and defendant brings error.    Affirmed.

*Martin Rozema* and *Nims, Hoyt, Erwin, Sessions & Vanderwerp*, for appellant.

*W. D. Fuller*, for appellee.

OSTRANDER, J.    Joseph B. Jewell, a resident of Newaygo county, Mich., died testate June 29, 1897, and on August 16, 1897, letters testamentary were issued.    James M.

Jewell, his brother, filed September 19, 1902, a claim against the estate, which is here set out, from the record, in full:

"STATE OF NEW YORK, ⎫
    County of Erie, ⎬ ss.
    Town of Evans. ⎭

"James M. Jewell being duly sworn, deposes and says:

" 1. That on or about the 15th day of May, 1877, he deposited with Joseph B. Jewell, late of the town of Sheridan, county of Newaygo, State of Michigan, the sum of $1,000, lawful money; the same to be loaned on unincumbered real estate, with first mortgage security.

"2. That he appointed the said Joseph B. Jewell, late of the town, county, and State aforesaid, his agent for the purpose of loaning said money, and, to that end, granted him a power of attorney, and that he afterwards at divers times transmitted certain other sums of money to be loaned in like manner.

" 3. That said moneys were loaned as set forth in the bill of items annexed hereto, a copy of the same being furnished by the administratrix of the estate of the late Joseph B. Jewell, and purported to have been transcribed from the deceased's books.

"4. That no part of said moneys was ever, to his knowledge or with his consent, loaned to the said Joseph B. Jewell, now deceased; that said agency has never been surrendered or revoked; and that no settlement has ever been made, nor any moneys paid over to him, by either the said agent, Joseph B. Jewell, now deceased, or by his heirs or administrators.

                                "JAMES M. JEWELL.

" Subscribed and sworn to before me this 15th day of September, 1902.
                                "HORATION P. MUFFITT,
        [Notary Seal.]                " Notary Public.

                    "EVANS, N. Y., September 17th, 1902.

"Estate of Joseph B. Jewell, as Agent, Fremont, Mich.
    "To James M. Jewell, Dr.:

| | | |
|---|---|---|
| 1890, Sept. 23d. Interest on Peter Omler mortgage | $60 | 00 |
| Interest on $60.00 two yrs. and six mos. | 9 | 00 |
| 1891, Feb. 16th. Received on Frank Westgate mortgage | 300 | 00 |
| Interest on same to March 17th, 1893 | 37 | 50 |

. 1891, Mar. 8th. Received on Frank Westgate-mort-
gage ---------------------------------   $57 00
   Interest on same to Mar. 17th, 1893 ------   6 84
 " Mar. 28th. Received on Charlotte Briggs
mortgage --------------------------   297 47
   Interest on same to Mar. 17th, 1893 ------   17 88
1892, Jan. 22d. Received on Frank Westgate mort-
gage -----------------------------------   308 00
   Interest on same to Mar. 17th, 1893 ------   21 00
 " Mar. 15th. Received on Peter Omler mort-
gage ----------------------------------   50 00
   Interest on same to Mar. 17th, 1893 ------   3 00
 " Mar. 8th. Received on Frank Westgate mort-
gage -----------------------------------   31 40
   Interest on same to Mar. 17th, 1893 -------   1 86
.1893, Feb. 1st. Received on Peter Omler mortgage   600 00
   Interest on same to March 17th, 1893 ----   4 50
 " Mar. 17th. Received on Peter Omler mortgage   427 48
      $727 48
    Less N. Y. draft, 300 00

      $427 48
 " " Received on Frank Westgate mort-
gage ---------------------------------   137 00

         $2,361 93
   Interest 9 years and 6 mos. -------------   1,256 15

         $3,618 08"

This claim was on December 20, 1902, disallowed. Ap-
peal was taken to the circuit court for Newaygo county,
and, as the result of a trial in that court, a verdict and
judgment for $2,254.02 in favor of claimant was entered.
No testimony was offered on the part of the estate, and
the substance of all the testimony given is in the record.
At the conclusion of the case made by claimant, the court
was requested to direct a verdict for the estate, for the
reason, among others, "that under the undisputed evi-
dence in this case the claim, if any ever existed, is barred
by the statute of limitations of this State." The motion
was denied, and a single question of fact was submitted
to the jury. They were required to find whether the

money collected by decedent after September 5, 1890, had been paid to claimant.

A somewhat extended examination of the testimony is necessary to a correct understanding of the case. Meager and unsatisfactory as in many respects it is, the testimony shows that claimant is a man upwards of 85 years of age, a retired farmer, living in the State of New York. In 1877, he began to lend money in Newaygo county, securing payment by real-estate mortgages running to himself; his brother, Joseph B. Jewell, acting for him in securing loans, taking and recording mortgages, and collecting interest and principal. The record of mortgages for Newaygo county shows a number of such mortgages to have been recorded, and during the period from 1883 to 1893 a number to have been discharged by decedent, who from November, 1881, had from claimant a written power of attorney to discharge and satisfy any and all mortgages " belonging to me, the said James M. Jewell, and which may now be or hereafter come into the custody and care of the said Joseph B. Jewell as the said mortgages shall become paid." Various remittances are shown to have been made to claimant, and various sums deposited to his credit in a local bank; and on September 5, 1890, on a visit made by decedent to claimant, a settlement was made, and evidence of it put in writing, and signed by both parties. In June, 1902, a representative of claimant came to Michigan, and had an interview with the widow of decedent and with the executor of his estate; and he and the executor visited the judge of probate, and secured an order opening the estate for presentation of claims. Evidence of the nature of the relations of the parties was afforded principally by the records in the office of the register of deeds, by the written power of attorney, by certain letters, and by a memorandum book. Eight of these letters, written by decedent to claimant from May 28, 1878, to February 14, 1887, with their envelopes; two, dated respectively March 16, 1887, and March 25, 1893, written by claimant to decedent; and one other letter,

with its envelope, dated November 30, 1881, written by decedent to Mrs. J. M. Jewell (Linda)—were, with the memorandum book, received in evidence, subject to objection. The memorandum book was found, after his death, among the papers of decedent. The entries in it were in the handwriting of decedent. The dates of the various entries are from August 25, 1881, to February 25, 1894. They relate, with the exception of the Linda Jewell loans, to the business of claimant, and àre records of the receipt and disbursement of claimant's money. This book contains the memorandum, signed by both parties, of the settlement of September 5, 1890, and after that eleven entries concerning the business of claimant, and one of the business of Linda Jewell. The following are examples of the entries contained in it:

Aug. 25, 1881.   J. M. Jewell, Cr., by interest on the Wm. Martin note that was due on the 1st day of June, '81_____ $25 00
Aug. 25th.   J. M. Jewell, Dr., to cash paid to Bal.__ 25 00
Sept. 30.   J. M. Jewell, Cr., by cash received on Martin mortgage _____ 350 00
June 30th, 1882.   J. M. Jewell, Dr., to draft on 9th National Bank by registered letter_____ 454 00
Oct. 18, 1882.   Forwarded to J. M. Jewell certificate of deposit on Weber, Hewitt & Co. bank, Fremont, §392.40, the same being interest on the Bill Beattie mortgage.

When this book was found, all entries down to the memorandum of settlement of September 5, 1890, were crossed in ink, as if of no further moment. Those entries made after September 5, 1890, are none of them so crossed. The letters and the memorandum book were competent evidence, as showing the nature, and, in some degree, the extent, of the business relations of these parties. The jury were instructed that it was for their consideration— that it was for them to say whether it was complete or incomplete. So far as evidencing any liability, they were told to consider none of the entries in the book prior to the settlement of September 5, 1890. No error was commit-

ted in receiving this evidence, nor in the charge relating to it. There was testimony from persons who paid decedent money for claimant after September 5, 1890, and receipts for money so paid, signed by decedent, were in evidence. A daughter of claimant testified to the contents of a destroyed letter which she saw and read at her home, in Wisconsin, about April 1, 1897, upon an occasion when claimant and his wife visited her. It was a letter from decedent to claimant, and contained the statement, in substance, that decedent had used claimant's money, and wished to turn out his property to make him all right. The last entry in the book showing receipt of money belonging to claimant is dated March 17, 1893. The last remittance of money to claimant, proved, was acknowledged by claimant in a letter dated March 25, 1893, and corresponds with the remittance of March 17, 1893, charged by decedent in the book.

The nature and legal effect of the relations existing between claimant and decedent is a question, and the principal question, debated by counsel. For appellant it is claimed that no such trust relations are shown as to take the case out of the operation of the statute of limitations; that, in any event, the agency of decedent was of such character that demand by the principal and accounting by the agent must be presumed to have occurred within a reasonable time after receipt of money by the agent.

When the settlement was made between these parties in 1890, the matters left in decedent's hands were investments already made, upon certain terms, to persons known. No other funds thereafter came to decedent from claimant for investment. The duties of decedent thereafter were confined to the receipt and remittance of moneys to become due. The claim presented specifies the Peter Omler, the Frank Westgate, and the Charlotte Briggs mortgages only, as to each of which the principal sum, the rate of interest, and the dates of payment must be presumed to have been known to claimant. The Westgate mortgage, given in 1887, matured March 8, 1892. The other two

mortgages were long past due in 1890. The Westgate mortgage was discharged by decedent March 7, 1893, as appears by the record. The others are paid, and the money was paid to decedent. The interest on the Westgate mortgage was payable annually; on the other two, semi-annually. The memorandum book shows that the decedent collected the following sums at the times stated, viz. :

| | |
|---|---:|
| September 23, 1890 | $60 00 |
| February 16, 1891 | 300 00 |
| March 8, 1891 | 57 00 |
| March 28, 1891 | 297 47 |
| January 22, 1892 | 300 00 |
| March 15, 1892 | 50 00 |
| March 8, 1892 | 31 40 |
| February 1, 1893 | 600 00 |
| March 17, 1893 | 728 20 |
| March 17, 1893 | 137 00 |

— a total of $2,561.07; and all of these sums were collected upon the securities named. The only sum shown to have been remitted was $300, in March, 1893, already mentioned.

Counsel for appellee claims, and we agree with him, that the testimony raises the presumption that the moneys collected by decedent had not been loaned again, and that the jury were justified in finding that decedent used all of the money collected after the settlement, excepting the amount of the single remittance. We think that, under the proofs, the charge of the court correctly stated the issue, and is in no respect open to criticism.

It was more than four years after the date of the last remittance shown before decedent died, and more than five years after his death that this claim was presented. Our statute of limitations, so far as applicable to cases like this, bars action "six years next after the cause of action shall accrue." 3 Comp. Laws, § 9728. Where a cause of action is fraudulently concealed, the statute limitation is not effective until two years after discovery of the fraud. 3 Comp. Laws, § 9739.

Conceding that the relation of principal and agent ex-

isted, claimant had a right of action at law against decedent for each of the several sums of money paid to him. No accounting was required. No equitable or other defenses could have been made to such actions. It seems to be the better rule, and better supported—although there is some conflict as to when a right of action accrues to a principal against his agent who collects his money—that, if the duty of the agent to remit is fixed, he is liable to an action for the money, and that a statute of limitations, worded as is ours, begins to run when action might be brought. *P. P. Mast & Co.* v. *Easton*, 33 Minn. 161. This in no way conflicts with the holding in *Kimball* v. *Kimball*, 16 Mich. 211, 219.

There is no occasion to consider in this case any question of what would be a reasonable time to make remittance or to discover the agent's dereliction. The proofs show that decedent collected claimant's money at periods running from 9 to 11 years before action brought.

Nor is the relation shown by the evidence such a trust relation as suspended the operation of the statute of limitations. In 2 Perry on Trusts, § 863, it is said—and numerous cases are cited—that, "as between trustee and cestui que trust, in the case of an express trust, the statute of limitations has no application, and no length of time is a bar." Manifestly, the author had in mind some definition of an "express trust," which definition must be discovered in order to apply the rule he gives. He cites, for example, *Kane* v. *Bloodgood*, 7 Johns. Ch. (N. Y.) 90, a leading case, which arose in 1823, in which Chancellor Kent uses this language:

"I cannot assent to the proposition that all cases of direct and express trust, and arising between trustee and cestui que trust, are to be withdrawn from the operation of the statute of limitations, notwithstanding a clear and certain remedy exists at law. The word 'trust' is often used in a very broad and comprehensive sense. Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may

be sued either at law, for money had and received, or in equity, as a trustee, for a breach of trust. * * *

"The reciprocal rights and duties founded upon the various species of bailment, and growing out of those relations, as between 'hirer and letter to hire, borrower and lender, depositary and person depositing, a commissioner and an employer, a receiver and a giver in pledge,' are all cases of express and direct trust. * * *

"Are all such cases to be taken out of the statute of limitations, under the notion of a trust, when one of the parties selects his remedy in this court [court of equity]? A review of the decisions will enable us, as I apprehend, to deduce from them a safer and sounder doctrine, and to establish, upon the solid foundations of authority and policy, this rule: That the trusts intended by the courts of equity not to be reached or affected by the statute of limitations are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of this court."

There follows an exhaustive review of the English and earlier New York cases. As supporting the rule above stated, Angell on Limitations, § 166; *Farnam* v. *Brooks*, 9 Pick. (Mass.) 242; *Robinson* v. *Hook*, 4 Mason (U. S.), 152; *McClane's Adm'x* v. *Shepherd's Exec.*, 21 N. J. Eq. 76; *Hayward* v. *Gunn*, 82 Ill. 385; *Cook* v. *Woodley*, 2 N. J. Eq. 209; *Cone* v. *Dunham*, 59 Conn. 145 (8 L. R. A. 647, and note); *Boyd* v. *Fire Ass'n*, 116 Wis. 155 (61 L. R. A. 918); *Merton* v. *O'Brien*, 117 Wis. 437; *Buttles* v. *De Baun*, 116 Wis. 326. The opinions filed in these cases cite—each of them—a large number of other decisions, and a number of these have been examined. The variations, so far as facts are concerned, are infinite, and the rule is often loosely stated.

In *Merton* v. *O'Brien*, supra, it is said:

"It is frequently said in the authorities that in case of an express trust, as between trustee and cestui que trust, the statute of limitations does not apply. This language is not accurate, and may be very misleading."

The case of *Shepherd* v. *Shepherd's Estate*, 108 Mich. 82, is the only case determined by this court in which the

question was raised as it is here raised. In that case it appeared that decedent was, until his death, the general agent of claimant, and had control and management of his business at Charlotte, Mich.; signing his principal's name to notes, making settlements for him, having entire charge of his books, and generally exercising authority without limitation. The court found that this business was in the hands of decedent, a trust estate, and the continuance of the trust was interrupted only by the death of the agent. No accounting had ever been had. It is true that the principal presented his claim to the commissioners on claims in probate court, and on appeal the matter was referred by the circuit court, on stipulation, to referees, who seem to have occupied 46½ days, each, in making and stating an account. It was apparently a matter which, if settled in the lifetime of decedent other than amicably, would have required the interposition of a court of equity. The case is not an authority for claimant here.

We should agree with counsel for appellant that the statute of limitations had barred this demand if it were not for the effect to be given the letter about which the witness Ina Brodie gave testimony. She says that from about April 1, 1897, until some time in October, 1897, her father, the claimant, and his wife, visited her at her home in Wisconsin; that while there her father received a letter from his brother, decedent, written a few weeks before his death, in regard to these matters; that she saw and read the letter; that, after the departure of her father and mother, she found this letter in the room they had occupied, and destroyed it. She testified that she saw the envelope in which the letter came; that the letter was from Fremont, the home of decedent; that she knew decedent's handwriting; and that the letter was in his handwriting. Asked to state the contents of the letter, objection was made by counsel for the estate, and this objection is the ground for the fourth assignment of error. This assignment is abandoned in this court, and we treat the testimony called for as properly admitted. The letter con-

tained the statement: "I have used the money and I want to turn out my property to make you all right." This witness also testified that many letters passed between claimant and decedent while claimant was at her house. We are of opinion that if this letter, containing the matter stated, was written and received as testified to by this witness, there was a sufficient acknowledgment of the demand to which consideration was limited, within the meaning of 3 Comp. Laws, § 9740; *Rumsey* v. *Settle's Estate*, 120 Mich. 372.

The ruling of the trial court to the effect that the statute of limitations was no bar was not put upon the ground that the running of the statute had been interrupted, but upon the ground that the relations of the parties was such as to preclude the running of the statute. Upon this point, namely, the reason for the ruling, we do not agree with the learned trial judge, and do agree with counsel for appellant. We are therefore obliged to consider whether, because the matter of the truth of this testimony was not submitted to the jury, we should reverse the finding of the jury and order a new trial. Counsel for appellant do not ask for a reversal upon this ground. Indeed, this letter and the effect of it are not at all discussed in their brief. The contention on the part of the estate is that there was no question for the jury. The requests to charge do not raise the point, nor do the assignments of error. We conclude, therefore, that we must hold that no error was committed in instructing the jury that the statute of limitations had no application.

The claim was properly allowed. Claimant will recover costs of this court.

McALVAY, GRANT, BLAIR, and MONTGOMERY, JJ., concurred.