### OSBORNE and others *v.* SMITH.

*(Circuit Court, D. Minnesota.  October, 1883.)*

1. GUARANTY—WHAT CONSTITUTES.

    The defendant is agent of the plaintiff to sell machines. The contract entered into by the parties provides, among other things, that in case the machines are not paid for wholly in cash, the note of the purchaser for the unpaid balance shall be given, payable to the order of the plaintiff, "and shall be indorsed, and the collection thereof guarantied, by the 'defendant,' waiving demand, protest, and notice of non-payment." The defendant is sued as guarantor of certain notes. The court, in charging the jury, *held* that the defendant, by indorsing a note in compliance with the terms of the contract, became a guarantor.

2. SAME—USUAL RULE AS TO LIABILITY OF GUARANTOR.

    Ordinarily, to render a guarantor liable, the execution against the principal debtor must have been returned *nulla bona.*

3. SAME—PRIMA FACIE DILIGENCE—JUDGMENT IN JUSTICE'S COURT—RULE.

    A judgment obtained against the principal debtor in a justice court, although not recorded so as to become a lien on real estate, is *prima facie* evidence of due diligence. When the debt itself can only be collected in the justice court, a creditor is only bound to proceed by suit, obtain judgment, and issue execution. Such evidence will be overthrown by showing that the principal debtor had real estate which might have been secured by recording the justice court judgment.

4. SAME—RULE AS TO SOLVENCY.

    To be solvent, one must have property out of which his debts can be collected. A guarantor cannot require that suit be first brought against the principal debtor, if the latter is insolvent.

5. SAME—CHATTEL MORTGAGE—SUBROGATION OF GUARANTOR.

    A creditor is not required to resort to a chattel mortgage given by the principal debtor before suing the guarantor of the debt. Should the guarantor pay the debt, he would be entitled to be subrogated to the rights of the creditor against the debtor.

6 ATTORNEY'S FEES IN NOTE.

    To entitle the holder of a note to the attorney's fees stipulated therein, suit must first be commenced against the maker of the note.

At Law.

*G. D. Emery, Jackson & Pond*, and *Gordon E. Cole*, for plaintiffs.

*O'Brien & Wilson*, for defendant.

NELSON, J., (*charging jury.*) This suit is brought by D. M. Osborne & Co., a corporation organized under the laws of the state of New York, against the defendant, Smith, who was one of its agents. The suit is brought upon the guaranty of Smith upon 29 notes, and is also brought to recover upon his individual promissory note, which was given to this company for the purchase of certain machines. This corporation was engaged in the manufacture of mowers and reapers, and the manufactured articles were sent broadcast to agents throughout the western states. Smith was appointed an agent under a contract which he made with the company for Jackson county, the county of Cottonwood, and portions of Nobles county, in this state, December 3, 1879. This contract ran for the season, which ended on the first day of August, 1880, and most of the obligations upon which he is sued as guarantor were made during the year 1880.

It is necessary, gentlemen, for the plaintiff in this case, before it can recover, in the first place to prove the contract of guaranty; next, to prove that the defendant, Smith, is in default. It is claimed that the contract of guaranty in these cases was contemporaneous with the original trade; that is, that when the principal debtor entered into his contract with the company, Smith, by virtue of his contract with the company, became contemporaneously responsible as guarantor for the payment of the debt—the principal debt. I might here call your attention to this contract of 1879, which was entered into, terminating, as I said, on the first of August, 1880. It is a very stringent contract, gentlemen, and a valuable one. It is a contract of agency for the sale of these machines, but certainly it is presumed to have been of considerable value to the defendant, for he subsequently renewed it, and we have here in evidence another contract which was entered into on the twentieth of December, 1881. Although it contained very stringent terms, as far as the agent was concerned, still it was signed and entered into by this agent with his eyes open. It is in print, and evidently must have been well understood by the defendant in this case when he entered into it. In order to sustain the first position which I stated to you, it was necessary for the plaintiff to prove this contract of 1879, which contains this provision: "All machines received from the said party of the first part [that is, the corporation] shall be sold by the said party of the second part, either for cash or such good and approved notes as are hereinafter described, and all such machines shall be and remain the property of the said D. M. Osborne & Co. until so sold or are otherwise settled for as herein provided."

As between the agent and themselves it was a sort of conditional sale; that is, the machines that were shipped to him were conditionally sold to him, provided he complied with the terms of the contract itself. "When sold for cash, either in whole or in part, the moneys received, to the amount of the price of such machine as above specified, shall be received by said party of the second part as the moneys of and for the said D. M. Osborne & Co."

It is very stringent, gentlemen, and provisions, as you will see, are put in evidently with the intention to hold the party to the agreement liable to indictment in case he appropriated the funds that he received in payment for these machines: "And be transmitted by said party of the second part to said party of the first part, by express or draft, without delay." Now, here is the provision that shows the character of the guaranty: "And when not wholly paid for in cash, notes of the firm, furnished by the party of the first part, shall be taken for the unpaid balance of the hereinbefore specified price, as the case may be, signed by the purchaser, and payable to the order of the said party of the first part, [this Osborne & Co.,] and shall be indorsed, and the collection thereof guarantied, by the said party of the second part, waiving demand, protest, and notice of non-payment thereof, and be made payable at some bank or express-office located in the county which is the residence of the purchaser." That explains the character of the guaranty which the defendant in this case entered into when he signed this contract of 1879.

Now, the plaintiff has offered in evidence, in addition, various notes which were received by the defendant, Smith, on the sale of these machines which were sent to him. These notes are all of the same character, although some of them have attached to them, and forming a part of them, a statement as to the amount of real estate that the party purchasing is possessed of. We have very little to do at present with the face of the notes. It is the contract of the defendant here upon the back which is important in this case. On the back of this note which I hold in my hand—the note of Langer—is the guaranty of Smith, by which he complies with the contract in the manner in which he bound himself to comply when he signed it. All of these notes which have been offered in evidence here, in order to show what Smith engaged to do, are of similar character, except in some instances there appears to be more than Smith's guaranty. Other persons appear upon the note as joint and several guarantors with him. Now, what was Smith's contract? That is, what was the legal import of Smith's contract when he, in pursuance of the original contract for the sale of these machines, put his name on the back of this note? Smith's contract is this: He agrees that if Osborne & Co. shall not be able to collect by due course of law these several obligations which have been signed by various parties here who bought these machines, that he, the defendant,—that is, he, Smith,—would consider himself responsible for the same, without requiring any demand or notice of the non-payment of the note itself. That is his contract of guaranty, and that is the legal effect of placing his name upon the back of these various notes as he has done.

Now, if the plaintiff has performed on its part all it was required to do under and by the terms of this guaranty, and the guarantor has all the rights which he as a guarantor was entitled to in law, why, then, he cannot escape the liability that is fixed upon him by

law in signing this note as he has done. As I said, it is necessary for the plaintiff in this case to go still further, and to show that Smith was in default, before he can recover; the contract of Smith being that he is only responsible in case the notes cannot be collected by due course of law. Ordinarily it would be necessary for the creditor to commence legal proceedings, and obtain judgment and issue execution, and the execution be returned "no property found," before a creditor could collect the amount of the obligation from the guarantor. Now, it appears here in this case, without contradiction, that in some instances judgments were obtained against the principal debtor, I would call your attention to judgments that were obtained against Molas, for whom Smith became a guarantor, and also three judgments against Mary Stevenson for various sums. It has been urged by counsel on behalf of Mr. Smith that inasmuch as these judgments were obtained in justice court, and were not recorded in the district court, which is a court of record, which was necessary in order that they become a lien upon real estate, that they are not evidence of due diligence on the part of the creditor. They are *prima facie* evidence, gentlemen, of due diligence. Where the debt itself can only be collected in justice court, the rule of law is that the creditor is only bound to proceed by suit, obtain judgment, and issue execution. He is not required to use any extraordinary means and have the justice's judgment put upon the record of the district court in order to make the judgment itself *prima facie* evidence of due diligence on its part. Then, in order to overcome the *prima facie* case, it is necessary for the guarantor to show that if the judgment had been put upon record, the maker of the obligation had real estate which could have been seized by placing upon record the justice's judgment. Now, there is no evidence in this case, gentlemen, that these parties had any real estate against which this judgment could be enforced. So far as the judgments are obtained, they will be noted upon a memorandum, which I will hand to you, so that your duties may be partially expedited. The verdict in this case must go against the defendant; at least, so far as the Molas judgment and the Mary Stevenson or McDonald judgment are concerned. Well, a number of judgments have been noted here; I may be mistaken as to the number, but however many there are, the same rule would apply which I have stated.

I will here call your attention to the other cause of action against Smith himself, individually, upon this note, which was given for the purchase of machines. This note was given by Smith, and the only defense that he appears to have against it, which he attempts to urge here, is that there was a failure of consideration, viz., that the machines were worthless. This defense of failure of consideration, as I said yesterday, gentlemen, comes too late, and so far as that obligation is concerned—$322, and interest upon it—there

must be a judgment against him under any circumstances; and that brings me, gentlemen, to the other causes of action in this case. Now, as I have stated to you, the contract of Smith was to become responsible for the collection for these various obligations on which he appeared as guarantor. In all those cases where suit has not been brought, it is necessary for the plaintiff, before he can put the guarantor in default, to show that all these makers were insolvent; and by insolvency I mean this: I will give you the rule as stated by the learned counsel, that the person must have property which can be seized for the payment of his debts before he is solvent. If he has property only which is exempt, so that he can stand back and laugh at his creditors, why, he is not a solvent man, within the purview of the law. To be solvent he must have property out of which his debts can be collected. It is not necessary that they should be paid immediately when they are due, but the debts which he has incurred must be collectible out of property which is not exempt from execution, and that is the principal issue in this case, gentlemen; that is the issue of fact for you to determine. You have heard all the testimony here in the case *pro* and *con;* seen the witnesses on the stand here. Many of them are Germans who cannot speak the English language, and none of them have any real estate. They have secured the title to no real estate. It is all government land—a homestead. At the same time you have heard what they have said with regard to their ability to pay their debts. You will consider whether the plaintiff in this action had made out his case. If it has proved, by a preponderance of evidence, to your satisfaction that these gentlemen are insolvent, then it was not necessary for it to pursue a fruitless litigation and incur costs to attempt to recover judgment, because if the company had done so and had failed,—why, the guarantor would be responsible for all the costs that have been incurred by that litigation, as well as in the end be responsible for his guaranty. But if these men are not insolvent, and if due diligence has been used on the part of Osborne & Co., and these notes could have been collected, and Smith has lost by it, of course then you cannot hold him. That is a question for you to determine from the evidence.

There is another question here. In a great many of these cases chattel mortgages have been taken. Now, it is not necessary, when a chattel mortgage is taken in addition to other security, that the creditor should foreclose the chattel mortgage before he can sue upon the guaranty; but if he sues upon the guaranty before he exhausts the remedy upon his chattel mortgage, and the guarantor pays the debt, then he is entitled to the benefit of all such securities received; but in this case it does not appear that in any instance the guarantor has paid any of these obligations. The question may hereafter arise if he pays up the amount here, and there has been a loss to him by negligence and failure to properly foreclose the secu-

rities, and apply the amount obtained upon these notes.    Now, gentlemen, I shall not detain you any longer.    Here is a little memoradum. By the way, there are four other notes,—four notes here of Leidtke and Zellner, which were turned over to Osborne & Co. on a settlement under a contract entered into by Smith with this company in 1881. This contract provided that all these notes that were received by Smith in payment for these machines must be turned over as fast as they were received, if Osborne & Co. required it.    It is optional with them.    Smith can retain them in his possession, if not required to turn them over by Osborne & Co.    Now, as I said, this contract contemplated a settlement.    Smith might have a large amount of notes in his possession, and not be required to turn them over as fast as he received them.    On a settlement, either at the time the contract would expire, or soon thereafter, then, Smith would be required to turn over all the notes that were taken by him in a general settlement.    Now, if any of those notes which he turned over on that settlement, within six months after it occurred, were worthless or doubtful,—if it was doubtful whether they could be collected, or they were absolutely worthless,—then Smith was required to replace them with cash, or notes secured by good responsible parties, which would be acceptable to the parties of the first part; that is, Osborne & Co.

*Mr. O'Brien.* I think that provision applies to the inception, if it was discovered within six months that they were worthless at the time they were taken.

*The Court.* I am mistaken.    If these notes that were to be turned over in settlement were doubtful or worthless at the time that Smith took them, when he sold these machines, why then the company said: "You must be responsible for these notes.    We must, however, be diligent, and we will say six months; that we must discover within six months that these notes were doubtful or worthless at the time of the sale."    It is immaterial whether Smith knew they were doubtful or not in fact at the time they were given.    If at the time he took them upon the sale of this machinery they were doubtful, or were worthless, and the company within six months discovered the fact and asked Smith to replace them, if he did not do it he would be responsible.    Now, there are four notes of that character,—the Leidtke and Zellner notes; two of each, I think.

There is one note which amounts to some $200 and interest, called "the George Clark note."    The testimony of Smith is that this note was received by this company in payment for machines which he (Smith) purchased.    You will recollect what he said about this George Clark note.    He says that Clark was a man who traded with him, buying groceries, etc., and that he was indebted to him; that he gave him this note in settlement, and that he (Smith) turned over this indebtedness to Osborne & Co. as part payment for some machines that he himself actually purchased.    Under the terms of the contract he was required at the end of the year, at the option

of the company, to purchase all the machines on hand that remained over that season, and this Clark indebtedness, he says, was put into the form of this note, not as a note given for the purchase by Clark of any machinery, but was put in this form for the convenience of this transaction, and was turned over by him to Osborne & Co. in payment, or part payment, for these nine mowers that you have heard testified about. Now, it is claimed here that the provision in the note for attorney's fees, this 10 per cent., cannot be recovered because no suit has been commenced against Clark. I am inclined to think that provision applies especially to the suit brought upon the note itself. It is a little vague in its terms, but I think before 10 per cent. attorney's fees can be recovered there should have been a suit commenced on the note itself,—that is against the maker; so that, so far as that 10 per cent. for attorney's fees in these notes is concerned, there can be no recovery.

Here is a little memorandum which I have made, which I think is correct, with the exception that the attorney's fees, in every instance, should be struck out. In the case of those four judgments of course the attorney's fees are merged in the judgment, and that is the suit against the parties themselves, and can be recovered; but in the other cases you may strike out the attorney's fees, and deduct that from any sum that you may find for the plaintiff in this case.

Now, gentlemen, I think you will understand the testimony here, —understand the case, and I hope you will be able to arrive at a satisfactory conclusion. I will hand you this memorandum; I have compared it with the notes here, and it is proper also that you should have the pleadings and these notes, and you can run over this memorandum also, so as to satisfy yourselves as to the correctness of it. This memorandum was merely made by me to facilitate matters. You are not bound by it, gentlemen. You have the notes there and you can make your own calculations.