SHEPHERD *v.* SHEPHERD'S ESTATE.

1. APPOINTMENT OF REFEREES—ESTOPPEL.

A party who consents in open court to the appointment of two referees, instead of one or three, as provided for by the statute (2 How. Stat. § 7377), and who appears before them and submits the matters in controversy, is estopped from afterwards questioning the jurisdiction of the court to make such appointment.

2. SAME—POWER OF ADMINISTRATOR.

An executor or administrator is within the rule stated, the doctrine that such officer cannot waive any of the rights of the estate having no application to such a case.

3. TRUSTS—STATUTE OF LIMITATIONS.

The statute of limitations does not begin to run as against an express and continuing trust until repudiation by the trustee, and knowledge thereof on the part of the *cestui que trust.*

4. SAME—PRINCIPAL AND AGENT—BILLS AND NOTES.

Thus, where a general managing agent retains in his possession notes executed by him to his principal, with the understanding that they shall enter into the accounting between the parties, the statute of limitations does not begin to run as against the right to recover the amount represented by said notes until an accounting has been demanded.

5. SAME—INTEREST—ESTATES OF DECEDENTS.

Interest on the claim of a principal against the estate of his deceased agent is properly awarded from the date when demand was made upon the administrator for payment of the account.

6.  Appeal from Probate Court—Costs.

   2 How. Stat. § 5894, providing that, where a commission to hear
      claims against the estate of a deceased person is revived upon
      the application of a creditor who has failed to present his
      claim in season, "all costs and charges resulting from such
      application, and the proceedings thereon, had in the probate
      court, shall be paid" by the applicant, does not cover the
      costs on an appeal to the circuit, the same being governed by 2
      How. Stat. § 8982, which provides that, "upon appeals from
      probate courts to a circuit court, * * * costs shall be paid
      by the appellant or respondent, as shall be directed" by the
      appellate court.

Error to Eaton; Smith, J. Submitted December 4, 1895. Decided December 30, 1895.

James Shepherd presented a claim against the estate of Leroy Shepherd, deceased. The commissioners allowed the claim in part, and an appeal was taken to the circuit court, where referees were appointed to hear and examine the issues involved. From a judgment confirming the report of the referees in part, both parties bring error. Affirmed.

*Garry C. Fox*, for claimant.

*Huggett & Smith*, for defendant.

Long, J. Leroy Shepherd died, testate, April 23, 1889. Letters testamentary were issued, and claims filed against the estate, and on June 3, 1890, an order was made closing the hearing of such claims. December 21, 1891, the claimant made application to open the estate to hear his claim. The order was made, and a claim presented by claimant, amounting to some $30,000. Certain set-offs were proposed. The claim was heard before commissioners, and a finding made awarding the claimant $649.05. Appeal was taken to the circuit court. At the July term, 1892, a consent order was made that the case be referred to two referees, and they were duly appointed. These referees made a report in writing upon the various items

of claimant's claim and defendant's set-off on November 28, 1893, to which exceptions were taken by the defendant. A bill of exceptions was also settled before the referees. The referees found the claimant entitled to recover the sum of $2,315.81. The case was brought on for hearing before the circuit court, upon the exceptions taken, and the court confirmed the report of the referees in part, and disallowed certain items found by them, and entered judgment in favor of claimant for $1,149.71, with interest at 6 per cent. from November 28, 1893, the date of the report of the referees, with costs. The court also found the value of the services of the referees and their expenses, as follows: For expenses reported by them, $112; for services, each, $10 per day, for 46½ days each, $930,—total, $1,042. Both parties appeal.

The first question raised relates to the appointment of the referees. It is contended that the statute provides for the appointment of one or three referees, and that the court had no power to appoint two. Section 7377, 2 How. Stat., provides that—

"Issues joined in any civil action at law, whether of fact or of law, may, upon the written consent of the parties filed with the clerk, or upon their oral consent in open court, be referred to such person or such three persons as may be agreed upon by the parties, or appointed by the court in case the parties fail to agree."

It is further contended that, under the statute, only one instance is referred to where two referees may act, that being in section 7379, where it is provided that, when a vacancy occurs, the court or judge may make an order that the reference be completed without filling the vacancy.

We think that, if the statute should be so construed, defendant is not in a position to raise this question. The appointment of two referees was agreed upon, and the parties appeared before them, and submitted all their matters, and defendant for the first time raised the question when the order of confirmation was asked in the cir-

cuit court. Objections to the form of the order of refer-
ence or to the appointment of referees have been deemed
to be waived by proceeding with the reference; and so
the objection that the court had no jurisdiction to make
the order of reference is waived in like manner.  20 Am.
& Eng. Enc. Law, p. 683, and notes 4 and 5.

But counsel for defendant contend that, while this may
be true in ordinary cases, yet, where the claim is brought
against an estate, the administrator cannot waive any of
the rights of the estate.  Counsel cite several cases in sup-
port of this proposition; but all are cases where it was
held that the administrator could not waive the statute of
limitations, or that he could not admit the correctness of
a claim, holding that it is his duty to defend, preserve,
and protect the interests of the heirs.  But that question
is not so presented here.  The circuit court had jurisdic-
tion to hear and determine the controversy between the
parties.  The case was in that court to be determined, and,
by consent of the parties, it was referred.  The court had
the power to appoint referees, with the consent of the
parties; and inasmuch as they consented to the appoint-
ment of two instead of one or three, and submitted them-
selves to that jurisdiction, and appeared and tried the
cause, they are now estopped from questioning the juris-
diction.

The referees found that from February 20, 1882, until
the date of his death, Leroy Shepherd was acting in the
capacity of general agent of claimant, in the control and
management of his business at Charlotte, Mich., and that
during that period there never was any settlement be-
tween them in relation to such matters.  It appears that,
at the time of the death of Leroy Shepherd, there were
found among his papers certain notes signed by himself,
and given to James Shepherd,—one dated August 16,
1881, for the sum of $100, with interest at 9 per cent. per
annum, due six months from date; one dated March 6,
1885, for $235.41, with interest at 7 per cent., due one day
after date; one dated January 30, 1885, for $500, with

interest at 7 per cent., due one day after date; and one dated August 2, 1884, for $37.67, with use, on demand. When these notes were offered in evidence, they were objected to, on the ground that they were barred by the statute of limitations. This objection was overruled, and the referees took them into account in stating the account against the estate. The findings made by the referees with reference to the first note as the reason of its allowance against the estate, and why not barred by the statute of limitations, are, substantially, that the note was kept and treated by the deceased, during the period that he was acting as the general agent of the claimant, as a part of his account with claimant; and that claimant had no knowledge or notice at any time after the making of said note, and prior to the death of Leroy Shepherd, that Leroy Shepherd claimed that it had been paid; and that there was no evidence that Leroy Shepherd claimed that the ˙note had been paid; also, that Leroy Shepherd did not mark the note "Canceled" or "Paid in full," as he was accustomed to do, and did do, · with notes that were paid.     And the referees further found:

"But, on the contrary, we find that he kept it among other notes and papers of James Shepherd, which convinces us that he intended to account for it in the final settlement of his trust; and that Leroy Shepherd did not render an account to James Shepherd, and that no demand was made for such an accounting or settlement by James Shepherd, at any time during the life of Leroy Shepherd; and that the reason, among others, that the statute of limitations did not begin to run upon this note is that Leroy Shepherd, as general agent of James Shepherd, had possession of said note at the date of his death; and that, from his mode of keeping his account with James Shepherd, his principal (there being no stated time for accounting), the relation of Leroy Shepherd with regard to this note was rather that of trustee than debtor.

"We further find that during the period from about February 20, 1882, to April 23, 1889, James Shepherd resided away from the city of Charlotte all of the time ex-

cept about one year; that Leroy Shepherd had the control of the books of James Shepherd, showing his business at Charlotte, from February 20, 1882, until the date of his death; that he was acting as the general agent of James Shepherd during this entire period; that he gave notes for James Shepherd, and signed his name to them, and made settlements for James Shepherd, with all the apparent authority of a general agent without limitation; that James Shepherd had moved back to Mackinaw some time previous to the death of Leroy Shepherd, and resided there at the time of the decease of said Leroy.

"In answer to the general request of the attorneys for the estate, we would state that we do find from the evidence that, during the year 1884, settlements of some accounts were made by James Shepherd, as appears from his handwriting on the books, and that also, during the time that Leroy Shepherd was acting as agent, James Shepherd did look over the books of Leroy Shepherd with the deceased; but we find no evidence of a settlement, or an attempt to make a settlement, between them.

"We further find from the evidence that during all this time, viz., from February 20, 1882, to April 23, 1889, James Shepherd placed implicit confidence in Leroy Shepherd, and relied upon his judgment."

As a conclusion of law, the referees found as follows:

"We find that the statute of limitations did not commence to run against any of the items that we have allowed against the estate of Leroy Shepherd, deceased, for the reason that the transactions out of which each and all of such items arose occurred during the time intervening between February 20, 1882, and the date of the death of said Leroy Shepherd, deceased, and while said Leroy Shepherd was acting and did act as a general agent of James Shepherd, during all of said period, and, as we find from the evidence, with no stated time for accounting; and that no account had been rendered by Leroy Shepherd, deceased, to said James Shepherd of his transactions as such general agent during this period; and that no demand for such accounting had been made by James Shepherd prior to the death of Leroy Shepherd; and for this reason we find, as a matter of law, that the statute of limitations did not run against any of such items so allowed by us.

"And we further find, as a conclusion of law, applica-

ble to our finding number three, on item number one of claimant's bill of particulars, that, for the reason that the note of Leroy Shepherd came to his possession as agent and trustee of James Shepherd, the statute of limitations could not operate as a bar to James Shepherd's right of action on said note, and that there could be no such adverse holding of this note by Leroy Shepherd, deceased, until he, as such trustee of James Shepherd, had denuded himself of his said trust, either by delivering up said note, and claiming it was paid, or by assuming to hold it for himself as a paid note."

Upon these four notes the referees computed interest to the date of making the report, November 28, 1893. The total of the four notes allowed, with interest added, after deducting payments indorsed thereon, is $1,139.66.

It is contended by the defendant that these notes, or any balance due upon them, could not be made a matter of account, and that the referees were in error in so treating them, and thus seeking to avoid the running of the statute of limitations against them. It does not very clearly appear just how these notes came to be given, or whether James Shepherd knew of their existence at any time, except the first note. That note was given before the agency commenced. It was given by Leroy Shepherd to James Shepherd, and apparently continued in his hands, as did all the other notes. The course of dealing between the parties showed that James had intrusted the entire management of his business to Leroy; that he had placed all his papers in Leroy's hands, including the notes which Leroy had given. They evidently represented money which from time to time Leroy had had from James, and which, in a general accounting or settlement, they both expected would be considered and accounted for. The relation between the parties, under the finding of the referees, was that of principal and agent, and not that of debtor and creditor. It was a trust estate in the hands of Leroy, into which, it is quite apparent, James placed the first note, with the full expectation that it would be accounted for and paid. Leroy did not cancel it or mark it

"Paid," but carried it along, evidently as a part of the trust property in his hands. The other notes apparently were given for moneys which he held belonging to James, and which he intended to account for, and which moneys were represented by these notes.

The court below was of the opinion that a certain memorandum which was made by the deceased was sufficient to take the notes out of the operation of the statute. This memorandum was not upon the notes themselves, but appeared upon a separate paper. It was written as follows: "Memorandum of Leroy Shepherd's notes, drawn to James Shepherd." The interest was calculated upon the notes, and credits given for it, and a balance struck upon them of $904.24. This statement purports to have been made December 28, 1888. The referees did not admit this statement in evidence, but the circuit judge held that it should have been admitted, and based the ruling made by him upon it.

Whether the court below was or was not in error in that we need not consider. The finding of the referees, we think, must be sustained, that the amount represented by the notes was not barred by the statute. The referees found that Leroy had advanced no money to James, but that Leroy owed him for money he had taken out of the business. They further found that Leroy had demanded money from James to be used in the business, when in fact the books of James, and Leroy's own private books, showed that he had sufficient money on hand. We think, under the circumstances, that the statute of limitations would not commence to run on the notes until there was an accounting demanded, and that the referees were not in error in saying that the relation of principal and agent was shown, and not that of debtor and creditor. The whole matter was in the hands of Leroy as a trust, and, as such trustee, he was bound to keep the trust fund, and account for it at any time when called upon. *Kimball* v. *Kimball*, 16 Mich. 219. As between trustee and *cestui que trust*, in the case of an express trust, the stat-

ute of limitations has no application, and no length of time is a bar. As against an express and continuing trust, time does not run until repudiation or adverse possession by the trustee, and knowledge thereof on the part of the *cestui*. Such a trust is barred only on the doctrine of prescription by the lapse of 20 years, and, so long as the relation of trustee and *cestui* continues unbroken, the possession of the trustee is that of the *cestui*, and there can be no adverse possession for time to run upon. Perry, Trusts, § 863, and cases there cited. Under the facts found by the referees, this doctrine must be applied to the notes and the accounts, and we need not discuss this question further.

Complaint is made that the referees awarded interest from the date that the demand was made upon the administrators for the payment of the account. We think this was correct. Story, Ag. § 221; 4 Wait, Act. & Def. p. 138.

It is further contended that the court was in error in awarding costs against the estate, and compelling it to pay the fees of the referees. The statute (2 How. Stat. § 5894) provides:

" On the application of a creditor who has failed to present his claim, if made at any time before the estate is closed, the judge of probate may revive the commission, and allow further time, not exceeding three months, for the commissioners to examine such claim; in which case the commissioners shall cause personally to be notified the parties:   *   *   *   *Provided*, that all costs and charges resulting from such application, and the proceedings thereon, had in the probate court, shall be paid by the party making the application."

It is contended that the words of this statute in the proviso "had in the probate court" do not limit the costs to the proceedings there, but that, to whatever court it may be removed, the case is still as much in the probate court as when the proceedings were actually there, within the meaning of the statute as to costs. On the other hand, it is contended by counsel for claimant that he is not

bound under this statute to pay the costs and expenses, except on the proceedings in the probate court; and that, when the cause was removed from there by appeal, the costs were then governed in the circuit court by other provisions of the statute.

In this we think counsel for claimant is correct. 2 How. Stat. § 8982, provides: "Upon appeals from probate courts to a circuit court, and from the circuit courts to the Supreme Court, costs shall be paid by the appellant or respondent, as shall be directed by the court to which the appeal is made," etc.   See, also, 2 How. Stat. §.7385. We think the matter within the discretion of the circuit court, and we are unable to say that the amount awarded to the referees is too large.

Counsel for claimant, in his brief, says that, if the judgment of the circuit court is affirmed, he raises no questions on his appeal.   The judgment of the circuit court must be affirmed, and the proceedings certified to the probate court for Eaton county, with costs of this court to claimant.

The other Justices concurred.