Argued 24 January; decided 1 April, 1901.

## ROCKWELL *v.* PORTLAND SAVINGS BANK.

[64 Pac. 388.]

RECEIVERS—RIGHTS OF SECURED CREDITORS TO DIVIDENDS.

1. A secured creditor may prove his entire claim against an insolvent estate, whether in the hands of a receiver or an assignee, irrespective of his security.

INSOLVENCY—CONCLUSIVENESS OF ORDER ALLOWING CLAIM.

2. An order, made after a hearing on the merits, allowing a claim against an insolvent and directing its payment, is a final order and is conclusive upon the estate: *Rockwell* v. *Portland Sav. Bank*, 35 Or. 303, applied.

SURETY—EFFECT OF FAILURE TO PROCEED AGAINST PRINCIPAL.

3. The failure or refusal of a creditor to proceed against the principal debtor upon the request of the surety does not discharge the liability of the latter: *Findley* v. *Hill*, 8 Or. 247, approved.

EXTENSION OF TIME—DISCHARGE OF SURETY.

4. An agreement between a creditor and his debtor for an extention of time of payment for a definite period, on a valuable consideration, but with the consent of a surety will not discharge the latter.

From Multnomah: JOHN B. CLELAND, Judge.

This is a proceeding by the Mutual Savings Bank of San Francisco in the suit by Cleveland Rockwell to dissolve the Portland Savings Bank and wind up its affairs. The receiver, Richard Nixon, refused to pay the petitioner any part of certain dividends that he had been directed to distribute to the creditors of the insolvent, and he appeals from an order granting the prayer of the petitioner. AFFIRMED.

For appellant there was a brief over the names of *Dolph, Mallory, Simon & Gearin* and *Nixon & Dolph*, with an oral argument by *Mr. Chester V. Dolph*.

For respondent there was a brief and an oral argument by *Mr. Milton W. Smith*.

MR. CHIEF JUSTICE BEAN delivered the opinion.

On March 31, 1893, J. J. Browne made, executed, and delivered to the Portland Savings Bank three promissory notes,—two for $15,000 each, due nine months after date, and one for $20,000, due twelve months after date. Before maturity the Portland Savings Bank, for value, indorsed and transferred these notes to the Mutual Savings Bank of San Francisco, waiving protest, demand, and notice of nonpayment. Afterwards the Portland Savings Bank became insolvent, and a receiver was appointed, pending a suit to dissolve the corporation and close up its business. On January 24, 1895, at the request of the receiver, the attorney of the Mutual Savings Bank obtained from Browne a mortgage in its favor upon real property in Spokane to secure the payment of the promissory notes referred to. On February 4, 1895, its claim against the Portland Savings Bank for the amount due on the Browne notes on account of the indorsement thereof was adjudicated and allowed by the court, and the receiver directed to list the same among the liabilities of the insolvent bank, and to pay it as its other liabilities were paid. On May 17, 1897, the receiver notified the Mutual Savings Bank that, if it did not proceed within a reasonable time to foreclose the mortgage it held on Browne's property, he would apply to the court to have its claim removed from the list of the Portland Savings Bank's liabilities. A suit was soon thereafter commenced by the Mutual Savings Bank to foreclose such mortgage. On September 10, 1897, however, the attorneys of the respective parties entered into a stipulation that the suit should be, and it was thereupon, dismissed, in consideration of a payment by Browne of $7,028.52, to be applied in liquidation of one half the taxes on the mortgaged property for 1896, the interest due on the notes, and the balance, if any, upon the principal,

and a promise to pay the further sum of $5,000 on January 1, 1898, and $5,000 semiannually thereafter until the whole indebtedness, with interest, should be fully paid, and also to pay all taxes then due on the property described in the mortgage; the plaintiff agreeing that if Browne should make the payments as provided in the stipulation, and perform and carry out all other provisions of the mortgage, no suit should be commenced by it or its assigns upon the notes or mortgage. In September, 1897, the receiver was directed to pay a dividend of five per cent on all claims against the bank, and upon his refusal to make such payment on the claim of the Mutual Savings Bank this proceeding was commenced by a petition for an order directing him to do so. In answer to the petition the receiver states, as his reasons for refusing to make the payment, (1) that the claim of the petitioner is secured by a mortgage on real property exceeding in value the amount thereof; (2) that after the maturity of the notes held by the petitioner the receiver requested it to foreclose its mortgage and realize upon its security, but it refused to do so; and (3) that the stipulation in the suit brought by the Mutual Savings Bank against Browne to foreclose such mortgage, in consideration of which the suit was dismissed, is, in legal effect, an agreement, upon a valuable consideration, for an extension of time for two years in which to pay such notes, and was made without the consent or knowledge of the receiver, and therefore operated to release the Portland Savings Bank from any liability by reason of its indorsement or guaranty of the notes in suit. The petition was allowed, and the receiver appeals.

1. The questions referred to will be considered in their order. There is some conflict in the authorities as to whether a secured creditor of an insolvent estate is en-

titled to have his claim allowed, and to receive dividends thereon, without first exhausting his security. It was held in *Kellogg* v. *Miller*, 22 Or. 406 (29 Am. St. Rep. 618, 30 Pac. 229), that a creditor whose claim is secured by mortgage may prove the entire claim against the estate of an insolvent debtor in the hands of an assignee for the benefit of creditors, and receive a dividend accordingly, irrespective of his security; and it seems the same rule should apply to an insolvent estate in the hands of a receiver.

2. But, however that may be, the order of the court allowing the claim of the petitioner, made after the execution of the mortgage, was a final order (*Rockwell* v. *Portland Sav. Bank*, 35 Or. 303, 57 Pac. 903), and, in our opinion, is conclusive as to its right to participate in the dividends, so far as the effect of the mortgage is concerned.

3. The failure of the creditor to proceed against the principal debtor upon the request of a surety does not release the surety from liability: *Findley* v. *Hill*, 8 Or. 247 (34 Am. Rep. 578). In such case the surety may protect himself by paying the debt and being subrogated to the rights of the creditor: *Osborne* v. *Smith* (C. C.), 18 Fed. 126.

4. It is familiar law that an agreement between the creditor and principal for an extension of time of payment for a definite period, made upon a valuable consideration, without the knowledge or consent of the surety, will discharge the latter. It may be doubted, however, whether the stipulation entered into between the Mutual Savings Bank and Browne, on which the foreclosure suit was dismissed, was founded upon such a consideration. The argument is that the payment of a portion of the

taxes due on the property for the year 1896 is a sufficient consideration to support the agreement. That was the payment of an independent obligation of Browne's, and would seem, under some of the authorities, not to be a valuable consideration, within the doctrine invoked: *Solary* v. *Stultz*, 22 Fla. 263. But, whether it is or not, we think the extension agreement was made with the assent, if not at the request and upon the suggestion, of the receiver. In June, 1897, a short time before the commencement of the foreclosure suit, Mr. Browne, while on his way to San Francisco to arrange, if possible, with the Mutual Savings Bank to forbear a threatened foreclosure suit, called upon the receiver, as a result of which the receiver wrote to the Mutual Savings Bank, stating that Mr. Browne had advised him the bank was about to foreclose the mortgage it held as security, and saying: "I agreed with Mr. Browne that I would forbear bringing a foreclosure suit upon the deed of trust we hold securing his notes to the Portland Savings Bank, in consideration of his paying at once taxes upon the property for 1896, paying in four months an amount equal to the delinquent taxes, assessments, etc., and paying $5,000 on January 1 next; and I beg to say that some similar arrangement between him and you in respect of the notes guaranteed by the Portland Savings Bank would be satisfactory to me." There is no evidence that this statement of the receiver was ever withdrawn, and, as the stipulation in consideration of which the foreclosure suit was dismissed practically embodies the terms suggested in the receiver's letter, it is but fair to conclude that it was made in view of such letter, and as carrying out the suggestions therein. It is true, the receiver testifies that Mr. Browne informed him that the bank refused to enter into the arrangement suggested, but this is mere hearsay, and is inconsistent with the actual contract made between the bank and

Browne two or three months later. Under these circumstances, it would be unjust to hold that the Portland Savings Bank was discharged as a consequence of the agreement for a discontinuance of the foreclosure suit. This disposes of all the questions presented by the record, and, finding no error, the decree of the court below is affirmed. AFFIRMED.