Argued 4 November; decided 24 November, 1902.

## BAKER v. WILLIAMS BANKING COMPANY.

[70 Pac. 711.]

INSOLVENCY—ORDER ALLOWING CLAIMS—RES JUDICATA.

1. An order of a court of equity passing on the validity of a claim against a fund in the custody of its officers is a final determination of the right to participate in the fund, and cannot afterward be questioned by the then parties to the proceeding. Any and all objections not made by such parties when such order is entered are waived under the rule of *res judicata*.

ORDER ALLOWING CLAIMS—JUDGMENTS—INTEREST.

2. An order directing that certain claims against an insolvent estate be allowed as presented is not a "judgment," within the meaning of a statute fixing the rate of interest on judgments and decrees for the payment of money, and the entry of such an order does not preclude inquiry into the question of interest at a later date.

CONSTRUCTION OF ORDER ALLOWING CLAIMS—INTEREST.

3. A receiver's report on the affairs of an insolvent firm having shown sundry claims as presented, and that some of them were interest bearing, while others were not, an order entered *ex parte* that "said claims be allowed as presented and reported," particularly describing them, and that "claims in which interest has been provided for by the terms of the obligation shall bear interest at the rate stated therein from the date of each claim," is not a decision as to the right to interest on claims not bearing interest on their face.

INTEREST ON CLAIMS AGAINST AN INSOLVENT BANK.

4. Under a statute providing that interest shall be payable on all moneys after due, and on moneys received to the use of another and retained beyond a reasonable time without the owner's consent, call depositors are entitled to interest on their claims against an insolvent bank from the time of the allowance thereof by the court; presentation and allowance of the claims amounting to a demand.

INTEREST ON PUBLIC MONEY—INSOLVENT BANK.

5. Under a statute making it a crime for any person having public moneys to convert them to his own use or loan them with or without interest, a mere deposit in a bank for safe-keeping is not inhibited, but in case of the failure of the bank the public officer is not entitled to interest in his own right on public funds deposited therein until he has reimbursed the public treasury, and has thereby become the private owner of the claim.

EVIDENCE OF REIMBURSEMENT OF PUBLIC TREASURY.

6. A state treasurer having deposited public funds in a bank that subsequently failed while still holding the money, the officer presented a claim for it in his official capacity. The question of when the treasurer repaid the fund into the public treasury was afterward raised on an allowance of interest, and the succeeding treasurer testified that his predecessor had accounted for all the state funds by turning over some certificates of deposit and "a good many things that were representatives of money." *Held,* that the evidence was insufficient to show that the ex-treasurer had reimbursed the public treasury, and taken over to himself the claim against the bank, so as to entitle him to interest thereon.

PRESUMPTION OF CONTINUANCE OF CONDITIONS.

7. Where, in a proceeding for the allowance of interest on a claim against an insolvent bank, it appears that the money, when deposited, was public funds, on which the depositing officer was not entitled to interest, it will be presumed, in the absence of evidence, that the public character of the money continued to the time of the trial.

BURDEN OF PROOF.

8. Where information is peculiarly within the knowledge of one who desires to use it, the burden of proof is on him to show the facts.

From Marion: REUBEN P. BOISE, Judge.

On November 14, 1895, the Williams & England Banking Company, a corporation engaged in a general banking business at Salem, in this state, suspended payment, and in a suit brought for that purpose a receiver was appointed, with power to convert its assets into cash for the payment of its obligations, and to wind up its affairs. On January 3, 1896, by order of the court, the receiver published a notice to creditors, requiring all persons having claims against the bank to present the same to him, with proper vouchers, within ninety days from the date of such notice, and also notifying the creditors, stockholders, and all other persons interested, to appear within a

specified time, and file objections, if any, to the allowance of claims so presented. In pursuance of this order, claims were presented by Ladd & Bush for $10,000, and interest thereon at 10 per cent per annum, evidenced by two promissory notes; E. C. Giltner, agent, for $25,000, on five noninterest-bearing certificates of deposit, issued by the bank to sundry persons, and by them assigned to Giltner; Phil Metschan, as state treasurer, for $8,013.60, due on open account; E. J. Swafford, city treasurer of Salem, $7,349.33, on open account; and W. H. Odell, clerk of the State Land Board, for $5,047.27, on open account. On July 3, 1896, the receiver reported to the court a list of all claims filed with him, including those above mentioned,—stating, however, that none of the latter bore interest, except the claim of Ladd & Bush,—and asking for an order of distribution of the funds then in his hands. On the hearing of such report, the receiver and Ladd & Bush appeared by their respective attorneys, and, no objections having been filed to the claims so presented, it was "ordered, adjudged, and decreed that said claims be allowed as presented and reported to this court by said receiver;" describing them particularly, as in the receiver's report. It was also ordered that "claims in which interest has been provided for by the terms of the obligation shall bear interest, at the rate of interest stated herein, from the date of each claim as stated herein," and that the receiver pay out of the funds then in his hands, on each of the claims so allowed, a dividend of 38 per cent, including interest on the interest-bearing claims to the date of the failure of the bank. The order is silent, however, as to whether interest should be allowed on the noninterest-bearing claims, except that it is specified therein that they bore no interest. Thereafter the receiver continued to pay dividends on the principal of the claims so allowed, and in December, 1901, having enough money on hand to pay the principal of such claims and leave a balance to be applied on interest, he petitioned the court for instructions as to the payment of interest thereon. Ladd & Bush thereupon filed objections to any further payments of principal or interest on the claims of Giltner and Metschan, because such

claims represent funds of the State of Oregon improperly loaned to and deposited with the insolvent bank by Metschan, as state treasurer, for a consideration by way of interest to be paid to him, and such funds are the property of the state. They also object to the allowance of interest on the claim of Odell, for the reason that the amount thereof was deposited by him with the bank while acting as clerk of the State Land Board, or on that of Swafford, for the reason that it represents money belonging to the City of Salem, which he wrongfully and unlawfully allowed to accumulate in his hands; and they object generally to the allowance of interest on any claim other than those bearing interest by contract. In support of their objections, they aver that under their contract they are lawfully entitled to receive the full amount due them, principal and interest, and that there will not be sufficient funds to pay such amount and interest on noncontract interest-bearing claims.

Metschan and Giltner demurred to the objections of Ladd & Bush, and, their demurrer being overruled, they answered separately. Metschan, by his answer, denies that, at the time the claim referred to in the petition was filed by him with the receiver, the money represented thereby, or any part thereof, was state funds, and denies that the money was ever loaned to the bank, or improperly or unlawfully placed with it, and, as a bar to this proceeding, pleads the order and judgment of the court made in July, 1896, allowing his claim as presented. Giltner answered, denying that the claim as presented by him for money loaned to the defendant corporation by the treasurer of the State of Oregon, and denying positively that any of the money represented thereby was state funds at the time the claim was presented by him to the receiver, and, for a further defense, pleading as a bar to this proceeding the judgment and order of the court made in July, 1896, allowing his claim. He then sets up affirmatively the issuance by the bank of the certificates of deposit to his several assignors, and the assignment thereof to him. Swafford, and Baker, his assignee, filed an answer, in which they deny that the funds, or any part

thereof, represented by the claim of Swafford, was for money loaned to the bank, but aver that it was the property of the City of Salem, deposited with the bank for safe-keeping, and payable on demand; that Baker was one of the sureties upon the official undertaking of Swafford, and after the claim had been presented and allowed by the court he made a settlement with the city, and thereupon it and Swafford assigned to him the whole of the claim, and he is now the *bona fide* owner and holder thereof. Odell answered, denying some of the allegations of the petition, and alleging, in effect, that the claim, as presented by him to the receiver and allowed by the court, was for moneys tendered to him in the capacity of clerk of the State Land Board by various citizens of the state, in the form of checks, drafts and post office orders, which he placed with the bank for collection, with intent, as was his usual custom, to withdraw from the bank at the end of the month, and pay over to the state all of the money officially accepted and receipted for by it; that he had no personal interest in the fund, and received no interest from the defendant on account of the deposits; and that, on the failure of the bank, he borrowed on his individual and personal credit, and immediately paid to the state treasurer, for the use and benefit of the different funds to which it properly belonged, the whole of the amount due the state from him on account of said deposits. A reply was filed by Ladd & Bush to the answers of Giltner and Metschan, denying the force and effect of the order or judgment of July 3, 1896. Motions for judgment on pleadings were afterward overruled, and evidence was taken and submitted to the court, which made its findings to the effect that the consideration and basis for the claims of Giltner and Metschan were funds of the State of Oregon improperly deposited with and loaned to the defendant corporation for interest, contrary to the laws of the state, and thereupon ordered and directed that no interest be paid upon either of said claims, but overruled the objection as to other claimants. From this order, Metschan and Giltner and Ladd & Bush appeal. Affirmed.

For Giltner and Metschan there was a brief over the names of *Lionel R. Webster* and *Carson & Adams,* with an oral argument by *Mr. Webster* and *Mr. Loring K. Adams.*

For J. A. Baker there was a brief over the name of *Carson & Adams,* with an oral argument by *Mr. Loring K. Adams.*

For Ladd & Bush there was a brief over the names of *William H.* and *Webster Holmes,* with an oral argument by *Mr. W. H. Holmes.*

For the receiver of the Williams & England Banking Company there was an oral argument by *Mr. Woodson T. Slater, in pro. per.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. It is contended by Metschan, Giltner, Odell, and Baker that the order of July 3, 1896, allowing their claims against the insolvent estate, and directing the payment of a dividend thereon, is a conclusive adjudication of all questions sought to be litigated on this appeal. It is familiar law that an issue once adjudicated in a court of competent jurisdiction cannot be again litigated between the same parties or privies, and the judgment thereon is conclusive in another action on the same demand, not only as to every matter that was actually litigated, but as to every other question that might have been litigated: *Neil* v. *Tolman,* 12 Or. 289 (7 Pac. 103) ; *Morrill* v. *Morrill,* 20 Or. 96 (25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95). An order or decree of a court of equity regularly made in the matter of the receivership of an insolvent estate, upon the petition of a creditor, allowing or disallowing a claim payable out of the fund in the hands of the receiver, is within this principle. It has twice been practically so held by this court. The question first arose in *Rockwell* v. *Portland Sav. Bank,* 35 Or. 303 (57 Pac. 903), in which a creditor of the bank petitioned the court for an order requiring the receiver to list its claims, and directing that it be permitted to participate in the dividends theretofore declared and thereafter to be declared. The peti-

tion was denied, and, on a motion to dismiss an appeal from the order, it was held that it was final on the rights of the petitioner, because "it effectually and finally determines its right to participate in any dividends of the insolvent bank, whether declared before or after the entry of the order, and precludes the possibility of proceeding further in the premises." In another instance the receiver in the same case refused to pay a dividend on a claim of one of the creditors which on its petition had been allowed by the court, and, on an appeal from the order requiring him to do so, it was held that "the order of the court allowing the claim of the petitioner, made after the execution of the mortgage, was a final order, * * and, in our opinion, is conclusive as to its right to participate in the dividends": *Rockwell* v. *Portland Sav. Bank,* 39 Or. 241 (64 Pac. 388.) And such seem to be the decisions of other courts: *Trustees* v. *Greenough,* 105 U. S. 527; *Williams* v. *Morgan,* 111 U. S. 684 (4 Sup. Ct. 638); *Gumbel* v. *Pitkin,* 113 U. S. 545 (5 Sup. Ct. 616); *Standley* v. *Hendrie & B. Mfg. Co.* 25 Colo. 376 (55 Pac. 723); *Grant* v. *Superior Court,* 106 Cal. 324 (39 Pac. 604).

It will be observed that, in all the cases referred to, the order or decree under consideration was based upon a petition, regularly filed, setting out the facts constituting the claim. The petitioner thereby made himself a party to the suit, and the proceedings thereafter became in effect an independent suit or action brought by him to establish his claim; and the judgment or order rendered therein would naturally partake of the nature or characteristics of any other judgment or order, and be entitled to the same effect. In the case at bar, however, the order allowing the claims now in controversy was not based upon the petition of the claimants, but upon a report of the receiver, containing a mere list of the persons filing claims with him, together with the nature and date of the claim, a statement as to whether it bore interest, and, if so, the rate, date when filed, and amount; and the order allowing the claims as presented was apparently *ex parte,* and without notice to interested persons. It does not state that it was made after notice,

and, so far as the record shows, no notice whatever was given of the filing of the receiver's report, and no opportunity given to file objections thereto. It is true, the order recites that in the January prior thereto the receiver, by direction of the court, published a notice requiring all claims to be presented to him within ninety days from the date of the first publication thereof, and also requiring all objections to the allowance of claims to be filed within thirty days from the same date. It would scarcely be contended, however, that the court could thus cut off the right of creditors, stockholders, or others interested in the insolvent bank, to object to the allowance of claims prior to the time such claims were required to be filed. It is therefore doubtful whether the doctrine as to the conclusiveness of an order or judgment allowing claims against an insolvent estate in the hands of a receiver, made after notice to interested parties, could apply in this case. But it is not necessary to decide that question. Ladd & Bush, the objectors here, voluntarily made themselves parties to the proceeding, appeared by counsel at the time the order was made approving the receiver's report and allowing the claims, and they are concluded by whatever the court decided at that time. The objection that the basis of the several disputed claims was public funds, wrongfully and unlawfully deposited in the insolvent bank by the custodians thereof under such circumstances and agreements that a court of equity would not entertain a proceeding for the recovery thereof, might have been insisted upon by them at the time the matter was pending, but, not having been urged at that time, cannot be inquired into now at their instance. So far, therefore, as the legality and validity of the contested claims are concerned, and the right of the claimants to participate in the distribution of the funds in the hands of the receiver, the order of July 3, 1896, is conclusive in this proceeding.

2. It is further urged, however, that the order is not only conclusive as to the principal of the respective claims, but was a final determination of the right to interest thereon, and effectually barred the court from afterward considering that

question. This contention is based on the theory that the order
is a judgment or decree, within the meaning of the statute in
force at the time it was made (Hill's Ann. Laws, § 3587), pro-
viding that the rate of interest shall be 8 per cent on judg-
ments and decrees for the payment of money. In our opinion,
however, it cannot be so considered, but is nothing more than
an order passing the report of the receiver, and allowing the
claims presented to and listed by him as a basis for the distribu-
tion of the funds then in his hands, and for subsequent distri-
butions. It does not constitute a judgment or decree, as
ordinarily understood. It was made *ex parte*, without adverse
parties, without pleadings, and without any issue of facts being
tendered, and is therefore not entitled to be regarded in all
respects as a judgment or decree. It was an order made by the
court in the course of the distribution of the insolvent estate,
approving and allowing certain claims against it, and to that
extent is final and conclusive as to the validity of such claims
on parties or privies; but it does not preclude inquiry into the
question of interest on noninterest-bearing claims.

3. The order itself indicates that the court did not intend to
pass upon that question, but reserved it for further considera-
tion. The receiver, in reporting a list of the claims filed with
him, stated specifically in each instance whether the claim bore
interest or not; and the court allowed these claims "as pre-
sented and reported" by the receiver, incorporating in its order
the statement that the particular claims in controversy bore no
interest. In addition, it provided that interest should be paid
on interest-bearing contracts at the rate therein specified, from
the date of the obligation. The question of interest was there-
fore under consideration at the time, and the fact that the
order contains no reference to the noninterest-bearing claims
leads naturally to the conclusion that the court did not intend
such claims to bear interest unless in pursuance of a subse-
quent order. The question, therefore, whether the noninterest-
bearing claims are entitled to interest, and, if so, from what
date, is now to be determined without regard to the order of
July 3, 1896, allowing such claims as the liability of the estate.

4. The statute provides that interest shall be due and payable on all moneys after the same become due, and on money received to the use of another, and retained beyond a reasonable time without the owner's consent: Hill's Ann. Laws, § 3587. Money deposited in a bank, in the absence of a special contract, becomes due on demand, and, if not paid, will bear interest from that time: 16 Am. & Eng. Enc. Law (2 ed.) 1020, 1021. In case of the insolvency of the bank, the presentation of a claim to the receiver for the money so deposited, and its allowance by the court, are equivalent to a demand, within this rule, and thereafter the money is considered as withheld without the owner's consent. In *Richmond* v. *Irons*, 121 U. S. 27 (7 Sup. Ct. 788), the Supreme Court of the United States announces as the rule in reference to interest on claims against an insolvent bank that, "in the case of book accounts in favor of depositors, * * interest would begin to accrue, as against the bank, from the date of its suspension." And in California, where they have a statute like ours, it is said in *McGowan* v. *McDonald*, 111 Cal. 57 (43 Pac. 418, 52 Am. St. Rep. 149), that, "when a bank suspends business and refuses to pay its depositors, it thereafter clearly detains money which it received to their use, and, under the provisions of the Code, must be held liable for interest thereon." See, also, *Shepherd* v. *Shepherd's Estate*, 108 Mich. 82 (65 N. W. 580) ; *Harwood* v. *Larramore*, 50 Mo. 414; *In re Wainwright's Estate*, 13 Phila. 336. The claims in controversy should therefore bear interest at the legal rate from the date of their allowance, if they represent funds upon which the holders are entitled to receive interest.

5. It is contended by the objectors, however, that such claims represent public funds deposited with the insolvent bank by the custodians thereof, and not the private funds of individual claimants, and for this reason no interest should be paid them thereon. It is made a felony by statute for any person having in his possession any money belonging to the state, county, town, or other municipality to convert to his own use or loan the same, with or without interest (Hill's Ann. Laws, § 1772) ; and, while a mere deposit in a bank for safe-keeping is not

inhibited by this provision, it is manifest that in case of the failure of the bank the officer is not entitled to interest in his own right on the fund so deposited, whatever the right of the state or municipality might be in the premises. If, therefore, the claims are in fact for public money, as the objectors allege, no interest should be allowed thereon. A public officer may not loan, with or without interest, any part of the public funds in his possession, without being guilty of a felony; but he is required to keep such funds safely, and for that purpose may deposit them in a bank, provided they are at all times subject to his order, and there is no fixed period during which he has no right to demand their return: *In re Law's Estate,* 144 Pa. 499 (22 Atl. 831, 14 L. R. A. 103) ; *Allibone* v. *Ames,* 9 S. D. 74 (68 N. W. 165, 33 L. R. A. 585) ; *State* v. *McFetridge,* 84 Wis. 473 (54 N. W. 1, 998, 20 L. R. A. 223) ; *State* v. *Hill,* 47 Neb. 456 (66 N. W. 541) ; *Thompson* v. *Territory,* 10 Okla. 409 (62 Pac. 355). The deposit is made on his own personal responsibility, however; and if, in case of the failure of the bank, he makes the loss good, the money deposited must necessarily become his property, and thereafter be considered and treated as such.

Now, the claim in favor of Odell was for money tendered to him in the capacity of clerk of the State Land Board by various citizens of the state, in the form of checks, drafts, and post office orders, which he placed with the bank for collection, intending, in accordance with his usual custom, to withdraw at the end of the month and pay over to the state all money that had been officially accepted and receipted for; and it is affirmatively alleged and conclusively proved that on the failure of the bank he borrowed on his own individual and personal credit, and immediately paid to the state treasurer, for the use and benefit of the different funds to which it properly belonged, the whole of the amount due the state from him on account of such deposits. The claim in favor of Swafford was for money deposited by him as city treasurer with the bank for safe-keeping, and it is stipulated that after the presentation and allowance of the claim his bondsmen settled with the city,

whereupon he and the city assigned the claim to the defendant Baker, who is now the owner thereof. The loss to the state was therefore made good by Odell, and to the city by Swafford's bondsmen. There is no reason, therefore, either in law or equity, why they should not stand on exactly the same footing as other claimants holding noninterest-bearing contracts against the insolvent bank.

6. In the case of Giltner and Metschan, however, the evidence shows that the claims, as presented, were for money belonging to the state which had been deposited with the bank by Mr. Metschan as state treasurer; and there is neither allegation nor proof that the loss has been made up to the state, or that such money at any time has ceased to be state funds. The amount represented by the claim presented by Metschan was on an open account to his credit as state treasurer. The claim is presented and verified by him in that capacity, and therefore, on its face, shows that it is state funds. The Giltner claim was originally evidenced by certificates of deposit issued in Metschan's name. A few days before the failure of the bank, however, the certificates were surrendered, the fund divided up and new certificates issued to several private individuals, who immediately assigned them to Giltner as agent for Metschan, so this claim is also, in fact, for state money deposited in the bank by Metschan. In view of the statutory provision making it a crime for an officer to convert public funds to his own use, or to loan the same, with or without interest, it is clear that no interest should be allowed Metschan on either of these claims until it is affirmatively shown that the money has ceased to be public funds. If, after the failure of the bank, or after the presentation and allowance of the claim, he made the loss good to the state by paying the money into the state treasury, he became from that time the owner, in his private capacity, of the claims so presented and allowed, and would be entitled to interest thereon. But upon this question there is no allegation and no proof, except the testimony of his successor in office, that Metschan accounted to him for all the state funds by turning over some certificates of deposit, and "a good many things that were

representatives of money." This evidence is not only outside of the issues, but is insufficient to show that Metschan took over to himself the amount due from the insolvent bank by making the loss good from his private funds, and until such a showing the court cannot decree that interest be allowed thereon.

7. The objectors allege that, at the time the claims were presented and allowed by the court, the money belonged to the state. This allegation is denied by Metschan and Giltner. There was no evidence offered on the subject, however, except that the money was public funds at the time it was deposited in the bank, and it will be presumed that it continued to be such until the contrary is made to appear by the claimants.

8. The facts in relation to this matter are peculiarly within their knowledge, and hence the burden of proof is upon them to show that the money has ceased to be public funds, and until they do so no interest can be allowed thereon.

It is insisted that none of the noncontract interest-bearing claim holders are entitled to interest out of the funds in the hands of the receiver as against the claims of the objectors and all other parties holding interest-bearing contracts, and Daniell, Chancery Pl. & Pr. (Vol. 2, 6 Am. Ed. p. 1253), is cited in support of this doctrine. An examination, however, of the text and the authorities referred to by the author, shows that the principle there announced is based on a rule of the English chancery courts having the force and effect of a statute. See *Garrard* v. *Lord Dinorben,* 5 Hare, 213.

Upon the record as presented, the decree of the court below must be affirmed.                                    AFFIRMED.

<div align="center">Decided 24 November, 1902.